BROOKS (UNITED STATES v.). See Case No. 14,655.

BROOKS (UPHAM v.). See Cases Nos. 16,-796 and 16,797.

## Case No. 1,964.

BROOKS et al. v. VERMONT CENT. R. CO. et al.

[14 Blatchf. 463.][1]

Circuit Court, D. Vermont. May 21, 1878.

FEDERAL COURTS—JURISDICTION — SUIT PENDING IN STATE COURT—RAILROAD COMPANIES—FORECLOSURE—CONTEMPT.

1. Holders of some mortgage bonds of a railroad corporation brought a suit in equity, in this court, against the corporation and three individual defendants, who were trustees in the mortgage, to foreclose the mortgage, and remove the trustees. To the foreclosure portion of the bill, the corporation pleaded the pendency of a foreclosure suit in a court of the state, but, as that suit was not between the same parties or those fully authorized to represent the same parties, in the same behalf and for the same relief, the plea was overruled. To the part of the bill relating to the removal of the trustees, they pleaded, that what was alleged against them, in the bill, as ground for their removal, had been done by them, but in other relations to the property and in other capacities, under the direction of a state court. The plea was held to be bad.

[Cited in Mercantile Trust Co. v. Lamoille Val. R. Co., Case No. 9,432; Mercantile Trust Co. v. Portland & Ogdensburg R. Co., 10 Fed. 605.]

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

2. The trustees demurred to the whole bill, on the ground, that, to proceed with it, would interfere with the possession and control of the mortgaged property by the state court, and be a contempt of that court: *Held*, that, as neither the mortgagors nor any one claiming under them were in possession, such would not be the effect of proceeding with the suit for foreclosure merely, and that the demurrer must be overruled.

[Cited in Mercantile Trust Co. v. Lamoille Val. R. Co., Case No. 9,432.]

[In equity. Bill by Francis A. Brooks and others against the Vermont Central Railroad Company, John Gregory Smith, Worthington C. Smith, and Joseph Clark to foreclose a mortgage, and for other relief. Hearing upon pleas and demurrer. The pleas were allowed in part and overruled in part, and the demurrer was overruled.]

Francis A. Brooks and Edward J. Phelps, for orators.

Benjamin F. Fifield, George F. Edmunds, and Asahel Peck, for defendants.

WHEELER, District Judge. This bill is brought by the orators, as holders to a large amount of first mortgage bonds of the defendant railroad company, in behalf of themselves and other like holders, not citizens of the state of Vermont, to foreclose the mortgage, remove the trustees in the mortgage, who are the other defendants, and have the mortgaged property declared to be free from any lien claimed upon it in favor of debts held by the trustees, created in its management subsequent to the mortgage. To so much of the bill as goes for a foreclosure, the railroad company has pleaded the pendency of a bill of foreclosure in the court of chancery of the state of Vermont for the county of Chittenden, commenced in the year 1856 or 1857; to so much as relates to the lien claimed by the trustees, it has pleaded the pendency of proceedings in the court of chancery of the state for the county of Franklin, involving the validity of the same lien; and, to the residue of the bill, other proceedings in the same court, concerning the mortgaged property. The other defendants, the trustees, have demurred to the whole. The pleas were set down for argument by the orators and a hearing has been had upon them and upon the demurrer.

The sufficiency of the first plea depends upon whether the suit in the court of chancery for Chittenden county is between the same parties, or those fully authorized to represent the same parties, in the same behalf and for the same relief. It is not enough that it relates to the same subject, nor that it is founded upon the same instrument. Buck v. Colbath, 3 Wall. [70 U. S.] 334; Watson v. Jones, 13 Wall. [80 U. S.] 679. The bondholders who joined in that suit were Enos Collins, of Halifax, Nova Scotia, John E. Thayer, Gardner Brewer and Charles T. Alwyn, of Boston, Massachusetts, who are not only not any of these orators, but were not, so far as appears, then or ever holders of any of the bonds now held by the orators. So, the orators themselves have not been parties to the institution or prosecution of that suit, nor do they hold under any one, nor are they represented by any one, who has been such a party, unless it be by the trustees.

The mortgage is referred to in, and expressly made a part of, the bill of complaint. The operative part of it is a conveyance, according to the requirements of the law for conveying real property to the trustees. Then it provides for issuing the bonds to an amount not exceeding two millions of dollars, to be dated November 1st, 1851, to be payable November 1st, 1861, and to bear interest at the rate of seven per cent., payable semi-annually. Then it contains the following condition: "Now, therefore, the condition of this obligation is such, that, if the said Vermont Central Railroad Company shall well and truly pay, or cause to be paid, the accruing interest upon said notes or obligations, according to the terms thereof, and shall also pay the principal thereof pursuant to their promise, when the same falls due, then this obligation shall be void, otherwise to remain in full force." There are other provisions in the instrument, creating further rights, but none for defeating the effect of the conveying part, by making payment to the trustees. Defeasance could be made only by payment to the bondholders. Under this instrument the trustees, apart from the bondholders, took nothing but a naked dry trust. Each holder of a mortgage bond has had rights of his own to the mortgage security, and the trustees have, since default of payment, held the legal title for each and for all of the bondholders, and not at all for themselves. The situation became and has been like that where mortgages of farms or other real estate are made to secure several negotiable notes, which are afterwards passed to various holders. In most such cases, the mortgage property and the number of holders are very small compared to those here, but the rules of law by which their rights are governed are precisely the same, so far as applicable. In either case, the debts are the principal things, and the mortgage and estate of the holders of the legal title mere incidents. In neither could the ones having the legal title under the mortgage, without the debts, maintain a foreclosure alone. Davis v. Hemingway, 29 Vt. 438. A suit by the trustees under this mortgage, without joining some of the bondholders, would be wholly without foundation. So, the suit pleaded was not brought without joining some of them in it, as was necessary. But, any bondholder could institute and maintain such proceedings of his own motion, whether the trustees would or not, by making them defendants. Jones, Mortg. §§ 1383–1385.

The suit pleaded was instituted in behalf

of all who would come in as complainants. The plea alleges, that it was instituted by the bondholders who joined in it, in behalf of themselves and all other bondholders, without confining it to those who would come in; but those bondholders, clearly, were not agents for the rest, so they could institute a suit for them without they would come in. So, it is to be taken that it was in effect a suit in behalf of the bondholders who did, and all others who would, join in it. There is no doubt but that they could become parties to that proceeding, but they were not obliged to do so. If that suit had proceeded to a decree and an accounting to ascertain the sum due in equity, no one but the orators could present their bonds to be reckoned. If the accounting had been had and a final decree passed without their bonds having been reckoned, they would not have lost their rights. Wright v. Parker, 2 Aikens, 212. In Palmer v. Earl of Carlisle, 1 Sim. & S. 423, and Lowe v. Morgan, 1 Brown Ch. 368, where parts of debts secured by single obligations and by mortgage were sought to be foreclosed without the other parts, the foreclosures were refused. So, probably, a foreclosure had of such a part would be a bar to another foreclosure of the residue of the same debts. But, here, each bond is distinct and separate. In Montgomerie v. Marquis of Bath, 3 Ves. 560, there was a foreclosure of a part without the rest.

Neither were the trustees agents for the bondholders, before foreclosure accomplished, certainly, to institute any suit or proceeding for enforcing payment of their bonds. Sturges v. Knapp, 31 Vt. 1; Miller v. Rutland & W. R. Co., 36 Vt. 452. But, even if the trustees had authority to institute such proceedings in the name of the orators, as bondholders, or to prove their bonds in their behalf, after decree, so as to involve them in the proceeding, they have not done so. The suit has been merely kept on foot in the name of the trustees, by making new trustees parties, as others have disappeared, without, for many years, making any other progress. While the trustees are shown to have continued the cause, it is not shown that the bondholders who joined have survived, or that any others have entered; but, probably, it is to be presumed, in the absence of anything to the contrary, that they still continue to be parties.

The implication of agency of the trustees for the bondholders is not near so strong in this mortgage as in that of the Rutland and Washington Railroad; for, there, the condition was, if the mortgagor "shall pay, or cause to be paid, to the said trustees, or the legal holders, two hundred and fifty bonds, of one thousand dollars each," the conveyance should be void, so that a default could be saved by payment or tender to the trustees, while in this mortgage there is no such provision. And, when that suit was commenced, there had been no default in payment of the principal of the bonds, for, it would not be due for several years after, and it is not alleged that there had been default in the payment of the interest even, on the orators' bonds, or on all the bonds, so as to include them, and there might well enough be a failure to pay it on a part, and not on all, in which case there might be a foreclosure for those on which there had been a default, in which holders of others could not join.

From all these considerations it seems apparent that the suit pleaded was not the suit of the orators. They never brought it, nor joined in it, could not discontinue it, and cannot be barred by it. So, the allegation in the plea, that it was, "for the like relief and purpose" as this, must be understood to mean like relief to those parties to that claimed here for these. This plea is, therefore, overruled.

By leave of court, the orators have amended the bill by striking from the special prayer all that part praying for relief sought by that part of the bill to which the second plea is pleaded. It is urged, for the defendant, that this leaves all the facts in that part of the bill standing alleged, and that the relief could be had under the general prayer, so that, in effect, the bill is the same as before. This is, probably, true. But, the court understood the application for the amendment, under the circumstances, to be, in effect, a concession that this part of the bill could not be maintained in the face of the plea, or that, if it could, they did not care to undertake to maintain it. If there should be no judgment on that plea placed on the record, the defendant would be left in doubt as to whether it must answer that part of the bill further, which would not be just. To remove the doubt there should be a judgment allowing that plea.

The third plea is pleaded to the residue of the bill. There does not, however, seem to be anything of the residue except that part for the removal of the trustees. The substance of the plea is, that, whatever the trustees have done, alleged in the bill to be in violation of, or in opposition to, their trust, they have done under the direction of the court of chancery for the county of Franklin, in proceedings to enforce other rights claimed to exist in respect to the mortgaged property. From the bill and the plea it appears, that the trustees are not now in possession of the property in any capacity. Therefore, there is no question here, on this particular point, in relation to any interference by this court with the jurisdiction of that, growing out of the possession by that of the mortgage property, by them as its agents or officers. Those proceedings may be a full justification for all the trustees have done under them, as to everything except their right to continue to be trustees, and still they may have come out of them with such relations towards and interests in the

property, as that their position is hostile, or in opposition to the interests of the orators, of which they are trustees, as alleged in the bill. If so, those proceedings are not now any bar to the substitution of those not so situated in their places. This does not signify that there may not be other considerations on this subject that would be entitled to weight. The point right here is, whether those proceedings alone now should bar removal, and it appears that they should not.

The demurrer of the trustees raises the question, whether the bill, as drawn, can properly be maintained in this court. The principal reason urged against its maintenance is, that, to proceed with it would interfere with the possession and control of the mortgage property by the state court, and so would be a contempt of that court. It was said by the late learned Circuit Judge Johnson, in Pond v. Vermont Val. R. Co. [Case No. 11,264], with reference to this same subject, that it is no bar to a suit in one jurisdiction, that bringing it may be regarded as a contempt in another. It is for the court whose authority a party has disregarded, to vindicate its own authority. This is, doubtless, the correct rule, as matter of strict right. St. Joe & D. C. R. Co. v. Smith, 19 Kan. 225.

But, if this were not so, or if, as a matter of comity towards the state court, this court would not, as it probably would not, proceed with a cause so as to involve any such interference, it remains to be inquired of, whether proceeding with this suit by requiring the bill to be answered would bring any such consequences. It is quite clear that it would not, unless the property is in the custody of the court by its officers or appointees, and not in that of individuals or corporations by other authority. The nature of the possession, as shown by the proceedings in the state court, made a part of this record, has lately been before the highest court of the state for consideration, and, as this is a question arising under the laws of the state, the construction of the state courts, of the effect of the laws and proceedings, must control. There is some controversy as to what was and what was not settled by that decision. The court, through Barrett, J., after an exhaustive review of the situation and proceedings up to and including the compromise decree, so called and known, of 1864, says of that decree [Case No. 11,264]: "It was devised and put in form as the outcome of the mind and will of the parties— as the mode of consummating into validity a mutual arrangement by the parties as to their respective rights and interests, and as to the mode and means by which the property was to be held and used in serving and satisfying those interests. That decree adopted what had been created by the court as a receivership, as known and warranted by the law; but the administration of it was not left to the judicial judgment and direction of the court, under the law authorizing and governing a receivership, known to the law as such. Instead thereof, the parties enacted a code ex contractu for the administration of the property, and provided ex contractu that there should be the formality as of a decree supervening thereupon. Since that the administration has proceeded in pursuance of that fact and of that formality —practically, an administration by the agreement of leading real and representative persons and parties." It is argued that this was said with reference to a different proceeding from this, and that, notwithstanding those might be the views of that court with respect to proceedings for a sale of the property by the court, such as were then in hand, it does not show but that the possession of the property was that of the court. And such seems to be the opinion of the learned chancellor of the court of chancery for Franklin county, as stated in proceedings had before him in respect to the property, since the decision in the higher court. But, whichever is correct, this case is not affected, unless these proceedings under it would necessarily interfere with the possession of the property. The property has once been surrendered by the mortgagor in pursuance of the mortgage, and it has not since been in possession of the mortgagor, nor of any one claiming under the mortgagor, by any title acquired subsequently. The mortgagor has still left to it the equity of redemption of the mortgage. This bill, so far as it is for foreclosure, is brought to foreclose that. The prayer of the bill is, that an account be taken of the sum due in equity, a time of payment thereof fixed, "and, in default thereof, that said Vermont Central Railroad Company, and all persons claiming under it, may be barred and foreclosed of and from all equity of redemption in said mortgaged premises." If there should be a decree upon the bill as framed, it would run, that, in default of payment according to it, the mortgagor and all persons claiming under it should be foreclosed, and forever barred, of all equity of redemption in the premises. It was said, in the argument, that, upon the expiration of the time, this court would issue a writ of possession to its officer, and, in its execution, conflict of jurisdiction and officers then might ensue. It is true, that, under the statutes of the state, on a decree of foreclosure in the state courts, a writ of possession issues. Gen. St. Vt. 255, § 74. But, the processes of the state courts are not adopted in proceedings in equity in the United States courts, as they are in proceedings at law. Rev. St. §§ 913, 914. Such a decree, not redeemed, would merely cut off the title of the mortgagor, and no process of the court would be needed to follow it. 2 Bl. Comm. 159; 4 Kent, Comm. 180. But, if a writ of possession should follow the decree, it would run only against

the parties to the suit and those claiming under them, which would mean those so claiming by title since the proceedings. Jones, Mortg. § 1411. In this case there are no such parties so claiming, as appears, and there is no possession of the parties to the suit to be delivered.

Another ground urged in support of the demurrer is, that the bill shows a second mortgage of the property, and that those mortgagees are not made parties. If this was a bill to go further than to foreclose, this ground might be good. But, as a bill for that purpose merely, the subsequent mortgagees cannot be concluded by proceedings to which they are not parties. So, while they would be proper parties, they are not necessary parties. Weed v. Beebe, 21 Vt. 495; Jones, Mortg. § 1558. There are further remedies provided for in the mortgage instrument, one for possession under the mortgage after default for the space of ten days, and another for a sale of the property after default for six months, on demand of two-thirds in amount of the holders of the bonds, in writing, under their hands. These remedies are merely cumulative to, but do not displace, the one by strict foreclosure. Cheever v. Birchard (Sup. Ct. Vt. Gen. Term, 1869, pamphlet opinion of Steele, J. 32). The remedy by possession has been had. There are no allegations of any demand in writing, nor of any facts in the direction of a sale under any provision of the mortgage. So, the effect of any such proceedings is not now in question, and sales under ordinary proceedings for foreclosure are not known under the laws of Vermont. Gates v. Adams, 24 Vt. 70; Wing v. Cooper, 37 Vt. 169.

As this case now stands, these orators, owning a large amount of bonds secured by this mortgage, the trustees of which are so situated as to be interested in opposition to them, seek to foreclose the mortgage, so far as their rights are concerned, in this court. That they have the right to so proceed in this court would seem to be well settled by the decision and opinion of another late learned circuit judge, Woodruff, in the same cause before mentioned (Pond v. Vermont Val. R. Co. [Case No. 11,265]), in connection with the opinion of Judge Johnson. That a similar suit is maintainable in the federal circuit court, notwithstanding there is a suit pending in the state court in the same district, in which the orator might join or be joined, has been held by Chief Justice Waite, in the fourth circuit. Parsons v. Greenville & C. R. Co. [Id. 10,776]. And, that the pendency of a suit in the state court is no cause for abatement of another suit for the same cause of action in the federal courts of that district, seems to have been held by Mr. Justice Clifford, in Loring v. Marsh [Id. 8,514]. The doctrine of this latter case is somewhat criticised by Love, J., in Brooks v. Mills Co. [Id. 1,955], so far as it is applicable to suits in the same district. In the latter case, such a plea was held not to be good where it did not allege that the parties were the same.

There are some matters here presented looking in the direction of defences to these bonds, but these matters are not now for consideration in that respect. The question now in hand is not at all whether the bonds are enforceable against the defendant railroad company, or otherwise, but it is, whether the orators have the right to have their rights to foreclose the equity of redemption of their bonds tried in this court. So far as appears, as these objections are now considered, they have that right.

The second plea is allowed. The first and third pleas and the demurrer are overruled.