BROWN v. DENVER OMNIBUS & CAB CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1918.)

No. 5019.

1. APPEAL AND ERROR ⚫⟳856(4)—REVIEW—DISMISSAL

Where a complaint was dismissed generally, without any reason being specified, the defendants are entitled to insist upon all the objections made below in order to sustain the judgment.

2. COURTS ⚫⟳310—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP.

Where there was requisite diversity of citizenship between plaintiff and the principal defendant, that another party defendant was a citizen of the same state as plaintiff will not deprive the federal court of jurisdiction, unless such person was an indispensable party.

3. MORTGAGES ⚫⟳10—TRUSTEES—RIGHTS.

Since the enactment of the Colorado Public Trustee Act, there is no difference as to the interest conveyed by a trust deed to secure the payment of a debt as between real and personal property.

4. MORTGAGES ⚫⟳427(2)—TRUSTEES—TRUSTEE FOR BONDHOLDER.

The rule that in general courts can deal with bondholders only through their trustees is a rule of convenience, to facilitate the conduct of the suit, and is inapplicable where the trustee occupies a position prejudicial to the interest of the bondholders.

5. COURTS ⚫⟳310—MORTGAGES ⚫⟳427(2)—FEDERAL COURTS—FORECLOSURE—PARTIES.

Where the trustee named in a mortgage securing bonds refused to act, the trustee is not an indispensable party defendant to a suit by a holder of bonds to foreclose the mortgage; hence, though the trustee and the bondholder were citizens of the same state, yet, as there was diversity of citizenship between the mortgagor and the bondholder, suit to foreclose might be brought in the federal court.

6. COURTS ⚫⟳317—FEDERAL COURTS—JURISDICTION—REARRANGEMENT OF PARTIES.

In determining whether the federal court has jurisdiction on the ground of diversity of citizenship, the court will align the parties according to their interest, so the trustee of a mortgage given to secure bonds will be treated as a plaintiff, if an indispensable party, and, though it was a citi-

zen of the same state as the bondholder who began suit, the federal court has jurisdiction; the mortgagor being a citizen of a different state.

7. COURTS ☞317—FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—REARRANGEMENT OF PARTIES.

Where a bondholder, suing to foreclose a mortgage given to secure bonds, named the trustee, which had refused to act, a party defendant, *held*, that the omission of any prayer for judgment against the trustee warranted the federal court in treating the trustee as plaintiff, in determining whether there was requisite diversity of citizenship.

8. MORTGAGES ☞417—RIGHT TO FORECLOSE.

A complaint by a bondholder, seeking to foreclose a mortgage given to secure bonds, which alleged that the trustee had refused to act, that the mortgagor was in default, and that the holders of a majority in interest of the bonds had conspired to defraud other bondholders, and apply funds, properly applicable to payment of the bonds, to payment of unsecured indebtedness, *held* to state a cause of action for equitable relief, notwithstanding the mortgage provided for foreclosure only upon request of a majority of the bondholders.

9. MORTGAGES ☞414—PUBLIC POLICY—OUSTING COURTS OF JURISDICTION.

A provision, in a mortgage given to secure bonds, for foreclosure in event of default, upon request of a majority in interest of the bondholders, if precluding suit by a bondholder where a majority of the bondholders had conspired with the mortgagor to defraud, would be void as ousting the courts of jurisdiction.

10. MORTGAGES ☞401(2)—FORECLOSURE—STIPULATIONS.

A provision giving the majority in interest of the holders of bonds secured by a mortgage the option to declare the principal of the bonds due in event of default in interest does not prevent foreclosure for default in interest.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit by James H. Brown, for and on behalf of himself and all other holders of bonds who might come into the suit and contribute to the expenses, against the Denver Omnibus & Cab Company, a Wyoming corporation, and the Continental Trust Company. From a judgment dismissing the complaint, plaintiff appeals. Judgment as to the first-named defendant reversed, and case remanded, with instructions.

James H. Brown, of Denver, Colo., pro se.

William V. Hodges, of Denver, Colo. (D. Edgar Wilson, of Denver, Colo., on the brief), for appellee Denver Omnibus & Cab Co.

Thomas E. Watters, of Denver, Colo., for appellee Continental Trust Co.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. The complaint of the appellant alleged: That the Cab Company was a citizen of Wyoming and the Trust Company and appellant were citizens of Colorado. That appellant commenced the action in behalf of himself and all other holders of bonds secured by the mortgage hereafter mentioned who should come into the suit and contribute to the costs and expenses thereof. That July 31, 1909, the Cab Company in order to secure the payment of the principal and interest of 800 sinking fund first mortgage 6

per cent. gold bonds to be issued by it, executed and delivered to the Trust Company as trustee a mortgage or deed of trust on the property described in the complaint, consisting of real and personal property. That said bonds were all certified and issued by the Trust Company in the aggregate sum of $250,000. That plaintiff was the owner of 52 of said bonds, of the par value of $500 each. That the bonds were to become due October 1, 1929, and draw interest at 6 per cent. per annum, payable quarterly. That the Cab Company failed to pay the interest on the bonds which became due and payable July 1, 1916, October 1, 1916, January 1, 1917, April 1, 1917, and July 1, 1917. That on divers and sundry occasions within six months prior to the commencement of the action, and more than six months subsequent to said default in the matter of interest, the appellant, on behalf of himself and all other bondholders of the same class similarly situated, had made repeated requests, verbally as well as in writing, that said Trust Company act under said mortgage for the collection of said interest and the protection and enforcement of the lien of said mortgage. That said Trust Company made no objection to the requests that were verbal on account of said requests not being in writing, but wholly refused to act in any manner for the purpose of collecting said interest or to protect the lien of the mortgage. That John M. Kuykendall was the president and general manager of the Cab Company and together with Anna his wife, owned a majority of its stock; that John W. Springer was a stockholder, director, and at different times had held the office of president and vice president of the Trust Company, and now was in the general control and management thereof. That said Trust Company did a banking business, and the Cab Company, commencing July 1, 1910, became and was a borrower of the Trust Company to the extent of $70,000. That the Trust Company, pretending to act under the trust deed, but in fact wholly in violation thereof, certified and issued for a nominal consideration $100,000 par value of bonds of the Cab Company purporting on their face to be secured by said trust deed, in excess of the $250,000 in bonds above mentioned. That said Trust Company retained of said spurious bonds $85,000 par value as collateral security for the indebtedness of the Cab Company to said trustee. That the trust deed provided that, if any bonds should be lawfully issued by said Cab Company in addition to the said $250,000 par value, the proceeds thereof, together with 15 per cent. upon the amount issued to be furnished and supplied by the Cab Company from its earnings, should be invested in improvements, betterments, or other property, which improvements, betterments, or other property should become as fully subject to the terms, conditions, and covenants of the mortgage or trust deed as though expressly incorporated therein. That said 15 per cent. was not furnished by the Cab Company, nor was any of the proceeds of said spurious bonds invested in improvements, betterments, or other property of said Cab Company. That in April, 1913, the Trust Company sold its banking business, including the indebtedness of the Cab Company, together with the collateral securing the same to the Interstate Trust Company, the appellee Trust Company guaranteeing the payment thereof. That pretending to

act under a provision of the deed of trust on February 7, 1911, the Trust Company released from the lien of the trust deed property of the reasonable value of $55,000, and received therefor 25,000 shares of the common and 30,000 shares of the preferred stock of the Seeing Denver Company. That instead of holding said stock in trust for the benefit of the bondholders under the deed of trust, the Trust Company, in collusion with the Cab Company, permitted the latter to pledge said stock as collateral security for the unsecured indebtedness of the Cab Company. That by reason of this transaction $55,000 in value of the property covered by the trust deed was wholly lost to the bondholders. That the indebtedness of the Cab Company for the following years was about as follows:

| Years. | Bills Payable. | Bonds. |
|---|---|---|
| 1912 | $132,074.00 | $290,700.00 |
| 1913 | 124,799.00 | 290,700.00 |
| 1914 | 110,132.00 | 305,300.00 |
| 1915 | 104,203.00 | 305,300.00 |

That $250,000 of said bonded indebtedness represents the valid bonds issued under the trust deed. That, commencing about the year 1911, the Cab Company became indebted to the Denver National Bank in the sum of $15,000, which was subsequently increased to $23,850 and is a part of the bills payable above mentioned. That said bank was given of the bonds of said company, $19,200 par value, as collateral security for the indebtedness of the Cab Company. That one Harry C. James, a stockholder, director, and vice president of said bank, was also a creditor of the Cab Company, either personally or as an agent and representative of said bank, in an amount aggregating the sum of $12,500. That said James was also a stockholder of the Cab Company and also a bondholder in the sum of $5,200; that W. C. Bradbury claimed to be the owner of $7,000 par value of said spurious bond issue and also was a stockholder of the Cab Company and the owner of $10,300 par value of said valid bond issue. That one David G. Miller was a stockholder of the Cab Company and owned $10,000 par value of either the valid or spurious bond issue. That Frank L. Woodward was a large stockholder of the Cab Company and the owner of $35,700 par value of its bonds. That on or about the year 1912, John M. Kuykendall, in control of a majority of the stock of the Cab Company, caused and procured the said James, Bradbury, Miller, Springer, in control of the Trust Company, Woodward, and other holders of the valid and spurious issue of bonds of the Cab Company, to make a loan from and out of their said several personal holdings of the bonds, to be pledged as collateral to secure the different bills payable creditors of the said Cab Company, thereby making said bondholders general and unsecured creditors of the Cab Company for the face or other value of said bonds. That in the trust deed the Cab Company covenanted and agreed that it would in every year beginning with the 1st day of October, 1912, up to and including the 1st day of October, 1919, pay to the trustee not less than $10,000 in gold coin or its equivalent, to be applied by the trustee to the retirement of the bonds secured by said trust deed from and after

October 1, 1919. That at no time whatsoever did the Cab Company perform said covenant and agreement or in any manner provide a sinking fund for the payment of said bonds. The complaint also contained the following allegations:

"That in total and in entire disregard of their said legal and equitable obligations, so to do, as aforesaid, the said the Denver National Bank, Harry C. James, W. C. Bradbury, David G. Miller, Frank L. Woodward, and a number of other persons comprising the said bond-loaning unsecured creditors of said Cab Company, whose names to this [plaintiff] are unknown, did conspire and co-operate and confederate themselves together to cause and procure, and did and have ever since on or about the month of October, A. D. 1912, caused and procured the said Cab Company to commit a breach of its covenants and agreements aforesaid, in the aforesaid mortgage, so that the said Cab Company has and did and ever since said last date is diverting and misapplying any and all surplus of its earnings over and above the amount of its regular running expenses to the payment of the principal and interest of the said bills payable, and of the indebtedness for which the bonds of the aforesaid bond-loaning creditors of said Cab Company were and are pledged, instead of applying such surplus from said earnings to the payment of said first and prior lien of the interest upon said lawful bond issue, and to the creation and maintenance of the aforesaid sinking fund, as required by said Cab Company's said bond and mortgage contract, and thereafter to the upbuilding of the equipment of said Cab Company, and also have and did, during all the times aforesaid, conspire, co-operate, and confederate themselves together as aforesaid to and did cause and procure the said Trust Company to commit breaches of its said duties and obligations to this plaintiff and all other lawful bondholders for whom he sues herein, by failing, neglecting, and refusing to act or to exercise any of the powers or authority aforesaid, conferred upon it under the said mortgage, for the security, protection, and benefit of plaintiff and other lawful bondholders, or any of them, notwithstanding the default of the said Cab Company, concerning the creation of the said sinking fund and the said defaults in the payment of interest and coupons upon the said lawful bond issue."

"That this plaintiff has not any personal knowledge of the amount of the said earnings of said Cab Company that have been so wrongfully, illegally, and fraudulently misapplied and diverted from application and creation of the said sinking fund and the payment of interest in default by said Cab Company, but is informed and believes, and charges the fact to be, that there has been upwards of about forty-five thousand ($45,000) dollars out of the said earnings of the said Cab Company, since the 1st day of October, A. D. 1912, misappropriated and diverted from said first mortgage lien, under and in execution of the conspiracy aforesaid, and through the wrongful, illegal, and fraudulent acts and doings of the said conspirators and confederates in the manipulation of defendant Cab Company and of its assets and earnings, and by the said Trust Company, and each of them, and by their presidents and chief managing officers, Messrs. Kuykendall and Springer, and each of them, all done to the great and irreparable wrong, injury, and loss of the plaintiff and other lawful bondholders of his class; that having in view the large amount of the said bills payable indebtedness and other indebtedness of said Cab Company, which as plaintiff is informed and believes, and so charges the fact to be, amounts outside of and in excess of the amount of its regular monthly running expenses to about $150,000, plaintiff verily believes and fears that unless this honorable court shall give him the aid of its equitable process by injunction and by restraining order, and the equitable remedy or a receiver, to collect, conserve, and apply the earnings of said defendant Cab Company to the payment of interest upon the said lawful bond issue, and the creation of said sinking fund, for the payment of the principal of the same; that his bonds and coupons and those of all other holders of lawful bonds and coupons of the said lawful bond issue will be irreparably damaged and injured, and the same rendered entirely valueless."

"That the said defendant Cab Company was and is insolvent and unable to keep or make good any of its covenants and agreements, to protect the said

mortgaged estate from liens by attachment or garnishment, or judgment, or otherwise, at the suit of its creditors, whether secured or unsecured, and that all of the said earnings of the said mortgaged estate, and of the said mortgaged franchises of said Cab Company, were and are and will be until the appointment of a receiver herein, subject to be taken by attachment, or garnishment, or upon execution upon any judgment, at the suit of any creditor who sees fit to proceed by attachment against said defendant Cab Company."

"And plaintiff avers that, at all times in this complaint mentioned, the said Cab Company was and still is in the full, absolute, and undisputed possession of all that remains of said mortgaged estate, and is in the constant receipt of all the said earnings, and that the said defendant Trust Company is not in possession of the said mortgaged estate or earnings aforesaid; that by reason of the aforesaid wrongdoing and breaches of trust, so as aforesaid done and committed, by the said defendant Trust Company, and the part its said chief stockholder, president, and managing head is taking in the aforesaid conspiracy, it is unwilling and unable to take any action or steps whatsoever, as it ought, in equity and good conscience to do to protect each and every bondholder of the said valid bond issue, against the said spurious bond issue and the holders thereof, or to recover the said fifty-five thousand (55,000) shares of the Seeing Denver stock without subjecting itself to liability in heavy damages, to wit, to the amount of the par value of said bonds and the stock, namely, about one hundred fifty-five thousand ($155,000) dollars, and that by reason of the embarrassed condition of the said defendant Trust Company and its conflicting interests in the premises, and its part and the part of its said president in said conspiracy, and its aforesaid adverse interest to this plaintiff and all other bondholders of the said valid bond issue of said defendant Cab Company, for whom he sues, it has forfeited all right to any further trust and confidence in the premises and forfeited its right to longer act as a trustee in the said mortgage and that your plaintiff was and is entitled to proceed as for a performance of said mortgage contract in all respects, without the action or intervention in the premises of the said trustee, the said defendant Trust Company, on account of its involved and conflicting interests adverse to the interest of said plaintiff and all other bondholders of the said valid bond issue of said defendant Cab Company, for whom he sues."

"Plaintiff further alleges that he joins as a codefendant herein said the Continental Trust Company, as trustee, only because said Trust Company is named in said deed of trust as trustee, and that it has in no manner whatsoever, at any time, taken upon itself the execution of a or any of said trusts, provided for in the said trust deed, but, on the contrary, has at all times failed, neglected, and refused to do so. * * *

"That at no time whatsoever, in this complaint mentioned, has the said defendant Trust Company, as trustee, ever entered into or taken possession under said trust deed of any of the said mortgaged franchises, property, or estate of said defendant Cab Company or any part thereof, but, on the contrary, refuses so to do, and refuses to take any action to receive, collect, conserve, or in any manner protect or enforce the said mortgage lien of said mortgage contract, so given by said Cab Company upon its said franchises, property, and earnings, notwithstanding said defendant Cab Company has been for long over six (6) months in default, as hereinbefore alleged, both in the creation of said sinking fund, and in the payment of said interest and of the coupons representing the same.

"And said plaintiff, for and on behalf of himself and all other said bondholders, for whom he sues, hereby expressly reserves and excepts out of and from issue, trial, and determination in this action any and all actions, causes of actions, and suits, legal and equitable, by this plaintiff and others, as such bondholders, existing against said defendant Trust Company, either as trustee or personally, for and on account of any breach of duty or wrong done by said defendant Trust Company, as trustee, in the course of its said trusteeship, intending in this action only to bind said trustee so far as the court shall decree herein, in the recovery, restoration, conservation, protection, and collection of said mortgaged estate trust fund, and said past earnings, agreeable to the terms of said mortgage contract, and as might have otherwise been done by said defendant Trust Company but for its helpless

condition, as aforesaid; but this reservation shall not be taken or construed as in any manner preventing the said receiver, or this plaintiff, if authorized by the court herein, as prayed, from maintaining separate and distinct action or actions against said Trust Company, for the recovery of said mortgage estate, trust fund, and past earnings, or redress of any wrongs committed by it, deemed proper and necessary to recovery and fully restore said mortgage trust fund and security."

[1] The complaint prayed for no judgment against the Trust Company, but did pray for an injunction and receiver to protect the rights of the bondholders, and for a foreclosure of the mortgage for interest and for general relief. The Cab Company and the Trust Company each filed a motion to dismiss the complaint, only two grounds of which are insisted upon here, namely, that the complaint did not state facts sufficient to constitute a valid cause of action in equity and that there was no diversity of citizenship; the Trust Company being a citizen of Colorado, of which state the plaintiff was also a citizen. The trial court dismissed the complaint generally, without specifying the reason therefor. The appellees, however, would be entitled here to insist upon the same objections that they made below in order to sustain the judgment. Dowd v. United Mine Workers of America, 235 Fed. 1, 148 C. C. A. 495.

[2] The question of the jurisdiction of the court below as a federal court will first be considered. In order to oust the court below of jurisdiction the Trust Company must have been an indispensable party, without whose presence before the court a final decree could not be made, without either affecting its interest, or leaving the controversy in such a condition that its final determination might be wholly inconsistent with equity and good conscience. Minnesota v. Northern Securities Co., 184 U. S. 236, 22 Sup. Ct. 308, 46 L. Ed. 499; Hawes v. First National Bank, 229 Fed. 51, 143 C. C. A. 645, and cases cited;. United States v. Bean, County Treasurer, 253 Fed. 1, —— C. C. A. ——. The appellant, by the frame of his complaint and the nature of the relief asked for, could and did largely affect the question as to whether or not the Trust Company was an indispensable party. Storey's Equity Pleading (9th Ed.) §§ 127, 139, 214. The complaint not only specifically disclaimed any relief against the Trust Company, but the prayer asked relief only against the Cab Company. It thus appears that, so far as appellant could control the matter; the Trust Company was not an indispensable party. There remains the further question, however, as to whether, notwithstanding the wishes of appellant, could the court grant the relief prayed for against the Cab Company without affecting some interest of the Trust Company or leaving the controversy in such a condition that its final determination might be wholly inconsistent with equity and good conscience. The Trust Company has never taken possession of the mortgaged property and has no estate or interest therein except as trustee of the mortgage lien. Section 280, Colo. Code Ann. (Courtright); Session Laws Colo. 1894, p. 50, § 1.

[3-5] We do not understand that, since the enactment of the Public Trustee Act (1894), there is any difference as to the interest conveyed by a trust deed to secure the payment of a debt as between real

and personal property. An injunction against the Cab Company could not affect the Trust Company, so as to make it an indispensable party. Injunctions within the sphere of their operation bind all persons having knowledge thereof, whether parties to the action or not. A receiver of the mortgaged property could not affect any interest of the Trust Company, except its right to take possession of the mortgaged property, and according to the complaint it has refused to act in any manner in that behalf. A foreclosure, if that shall be finally found necessary, would affect no interest of the trustee, but would simply be the performance of a duty which the trustee refused to perform. When everything is said, the only interest in the controversy which the Trust Company has is the right itself to enforce the provisions of the trust deed, and it has this right in this very action, if it shall choose to do so. We do not think it is an indispensable party. The rule that, in general, courts can deal with bondholders only through their trustee, is a rule of convenience, to facilitate the conduct of the suit, and must give way whenever the trustee occupies a position prejudicial to the interest of the bondholders. Lake St. E. R. Co. v. Ziegler, 99 Fed. 114, 39 C. C. A. 431; Lowenthal v. Georgia Coast & P. R. Co. (D. C.) 233 Fed. 1010; Farmers' Loan & Trust Co. v. N. P. R. R. (C. C.) 66 Fed. 174; Jones on Corporate Bonds, 338.

[6, 7] However, upon the question of jurisdiction, this court will align the parties according to their interest; therefore, if the Trust Company is an indispensable party and wishes to remain so, we must align it with the appellant as plaintiff, where its duty also places it. Georgia Coast & P. R. Co. v. Lowenthal, 238 Fed. 795, 151 C. C. A. 645; Lindauer v. Compania et al., 247 Fed. 428, 159 C. C. A. 482.

The fact that no relief is asked against the Trust Company in this suit brings the case within Hamer v. New York Railways Co., 244 U. S. 267, 37 Sup. Ct. 511, 61 L. Ed. 1125. The omission of any prayer for judgment against the Trust Company shows that properly it is to be treated as a plaintiff in the case. Steele v. Culver, 211 U. S. 26–29, 29 Sup. Ct. 9, 53 L. Ed. 74; Dawson v. Columbia Avenue Trust Co., 197 U. S. 178, 25 Sup. Ct. 420, 49 L. Ed. 713. We therefore are of the opinion that the District Court had jurisdiction.

[8-10] Coming to the objection that the complaint does not state facts sufficient for equitable relief, we may say generally that the case presented is one where a bondholder owning $26,000 par value of the bonds of the Cab Company secured by the trust deed set forth in the complaint, suing for himself and all other bondholders similarly situated, alleges that the Cab Company is insolvent, has defaulted in the payment of interest, has refused to provide for a sinking fund, as it agreed to do in the trust deed, is misapplying its net earnings to the payment of unsecured indebtedness, has sold a portion of the mortgaged property and misapplied the proceeds thereof, has entered into a conspiracy with general creditors to defraud the plaintiff and other bondholders, has conspired with the Trust Company to issue $100,000 par value of the bonds of the Cab Company without consideration other than nominal, said bonds purporting to be secured by said trust deed, and that said conspiracy has been carried out and

the bonds delivered as collateral to general creditors. If this does not present a case for equitable relief, it would be hard to find one.

"It has been well said that whatever fraud creates equity will destroy. Its remedies and procedures for the circumvention of schemes and devices to cheat and defraud keep pace with the genius of the inventors of them." Monmouth Inv. Co. v. Means, 151 Fed. 159, 164, 80 C. C. A. 527, 532.

The mortgage covered "tolls, freight, incomes, rents, issues, and profits." It also provided that, if the Cab Company should default as to any of its covenants and legal proceedings were had, a receiver was a matter of right. We understand that the bondholders as a general proposition cannot control the disposition of the net earnings of the Cab Company until they have been impounded; but it is one of the objects of this suit to impound them, and the Cab Company covenanted to create a sinking fund from its earnings for the payment of its bonds.

As we understand the argument of counsel for appellee, it is this: There may be a cause of action stated, but such action must be brought by the Trust Company, and not even by it until the terms of the trust deed authorizing such a suit have been complied with. The general capacity of appellant to sue, the trustee having refused to do so, was in no wise challenged by the motion to dismiss, as a demurrer for want of equity, and that is what the motion to dismiss amounted to, so far as the ground now being considered is concerned, would not raise that question. As the right of appellant to sue under the restrictions of the trust deed, however, has been argued, under the point that the complaint is bad for want of equity, without objection, and as the question may arise hereafter, we will consider this point. The restriction is contained in paragraph 55 of the mortgage and reads as follows:

"It is further expressly agreed and made binding upon each and every holder of the bonds hereby secured that no proceeding of any nature or description, at law or in equity, shall be taken by any bondholder upon said bonds, or the coupons thereto attached, or either or any of them, or to foreclose the equity of redemption under this instrument, or to procure a sale of the property covered hereby, independently of the trustee or its successors or successors in trust, except after a request shall have been made to the trustee in the manner and form as herein provided, and after the trustee shall have been tendered adequate indemnity as herein provided, and also until after a refusal of the trustee to comply, or a failure of the trustee for a period of three months after such request to comply therewith according to the provisions of this instrument."

The trust deed provided that if default should be made in the payment of interest upon the bonds, and said default should continue for a period of six months, the principal of the bonds should become due and payable at the election of a majority in amount of the bondholders and that the trustee, when requested in writing by said bondholders, should declare the principal of the bonds due and payable. It also provided that in case default was made in payment of the interest on said bonds, or in case default should be made in the performance of any of the covenants of the Cab Company, and such defaults or either of them should continue for a period of six months

thereafter, the trustee might, and if requested in writing so to do by a majority in interest of the bondholders, and upon receiving indemnity satisfactory to it, should personally, by its attorney or agent enter into and upon all and singular the mortgaged property and operate the business of the Cab Company, applying the net revenue to the payment of the interest due upon said bonds. The trust deed also provided that in case any default should be made by the Cab Company as above specified, which should continue for a period of six months thereafter, it should be lawful for the trustee, after entry as above stated, or without entry, to foreclose said trust deed by judicial intervention or legal proceedings. According, therefore, to the terms of the trust deed, in order that a bondholder should have the right to commence an action independent of the trustee, a request to the trustee to act must be given by a majority in interest of the bondholders, and this request must be in writing, if it was desired that the principal of the bonds should become due and payable, or if it was desired that the trustee take possession, and also, in the latter case, indemnity satisfactory to the trustee must be given, and the failure of the trustee to act after request must have existed for three months. The condition precedent that a majority in interest of the bondholders should request the trustee to act before a bondholder can sue cannot be insisted upon to prevent the appellant from bringing this action, as the law will not require a vain or impossible thing to be done. Under the allegations of the complaint, a majority in interest of the bondholders have conspired with the Cab Company to absorb all the net earnings in the payment of unsecured indebtedness due said bondholders and the Trust Company. In such a condition of affairs, when might we expect a majority of the bondholders to request the trustee to act? Mercantile Tr. Co. v. Lamoille Val. R. Co., 17 Fed. Cas. 25; Brooks v. Vermont Cent. R. Co., 4 Fed. Cas. 308, 310-312; Clay v. Selah Va. Irr. Co., 14 Wash. 543, 45 Pac. 141; Lowenthal v. Georgia Coast & P. R. Co. (D. C.) 233 Fed. 1010.

The restrictive clause hereinbefore quoted, if held to prevent the appellant to institute this action, in view of the allegations of the complaint is void as ousting the jurisdiction of the courts. Toler v. East Tenn. Va. Ga. Ry. Co. (C. C.) 67 Fed. 168; Guarantee, Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 143, 11 Sup. Ct. 512, 35 L. Ed. 116; Railway Co. v. Fosdick, 106 U. S. 47, 27 L. Ed. 47; Morgan L. & T. Ry. & Steamship Co. v. Tex. Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625; Alexander v. Central R. Co., 3 Dill. 487, Fed. Cas. No. 166; Credit Co. v. Ark. Cent. R. Co. (C. C.) 15 Fed. 46; Farmers' Loan & Trust Co. v. Winona & S. W. R. Co. (C. C.) 59 Fed. 957; Mercantile Trust Co. v. M., K. & T. Ry. (C. C.) 36 Fed. 221, 1 L. R. A. 397.

The provision giving the majority in interest the option to declare the principal of the bonds due does not prevent a foreclosure for interest. Alexander v. Central R. R. of Iowa, supra; Beekman v. Hudson River West Shore Ry. Co. (C. C.) 35 Fed. 3-11; Farmers' L. & T. Co. v. Chicago & A. Ry. Co. (C. C.) 27 Fed. 146.

"The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies

at the foundation of orderly government." Chambers v. Baltimore & Ohio R. R., 207 U. S. 142, 28 Sup. Ct. 34, 52 L. Ed. 143.

We have examined the cases cited by appellees' counsel on the binding force of these restrictive clauses in mortgages and deeds of trust, and find them either inapplicable or opposed to the settled law in the federal courts. The result is that we hold that the District Court had jurisdiction and that the complaint stated a cause of action against the Cab Company. The judgment below as to it is therefore reversed, and the case remanded, with instructions to overrule the Cab Company's motion to dismiss, and allow it to answer the complaint within a time to be fixed, if it shall be so advised; and it is so ordered. In regard to the Trust Company, as the appellant in his complaint disclaims any right to relief in this action against it, the judgment of dismissal is affirmed, on the ground that as to it the complaint does not state a cause of action in equity.