HAWES et al. v. FIRST NAT. BANK OF MADISON et al.

(Circuit Court of Appeals, Eighth Circuit.   November 29, 1915.)

No. 4499.

1. COURTS &#9758;307—UNITED STATES COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP—"INDISPENSABLE PARTY."

An embarrassed debtor entered into an agreement with his creditors whereby his property was turned over to a committee of creditors in trust for the creditors, with power to hold, manage, control and sell it, etc.   The committee contracted to sell certain land constituting the only property of any practical value, to M., a citizen of Illinois, whereupon certain of the creditors, two of whom were citizens of Illinois, filed a bill asking the court to assume control of the trust and administer it through a receiver appointed by it, to enjoin the trustees and their agent, in whose name title was held, from conveying the property, to enjoin any conveyance pursuant to the contract with M., and to set aside such contract and order a public sale of the land.   M. was permitted to intervene. A decree was rendered adjudging that the trustees should not deliver any deeds to M., or pay him any money out of the assets of the trust estate, and ordering them to make no conveyances, except to a receiver thereby appointed, and to convey or cause to be conveyed all property to the receiver.   It also dismissed M.'s intervening petition.   On the trial the principal fault found with the trustees was that they had attempted to sell the lands to M. for much less than they were worth.   *Held*, that M. was an indispensable party, both by the relief prayed for and by that granted, and, as he was a citizen of the same state as two of the complainants, the court had no jurisdiction, as, while the court did not in terms cancel the agreement between M. and the trustees, the decree absolutely nullified that agreement and adjudicated M.'s rights.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850–854; Dec. Dig. &#9758;307.

For other definitions, see Words and Phrases, First and Second Series, Indispensable Party.]

2. COURTS &#9758;310—JURISDICTION OF FEDERAL COURTS—CITIZENSHIP—SUITS FOR RECEIVERSHIPS—NECESSARY PARTIES.

The debtor was himself an indispensable party to the suit, as complainants had no right to complain of the matters involved without proof of their claims, and their claims could not be established without the debtor being present in court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 857; Dec. Dig. &#9758;310.]

3. COURTS &#9758;405—JURISDICTION—DIVERSE CITIZENSHIP—OBJECTIONS.

Though no objection because of a defect of parties was made in the District Court, the Circuit Court of Appeals must notice the defect itself, if it is jurisdictional.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1103; Dec. Dig. &#9758;405; Appeal and Error, Cent. Dig. § 3302.]

4. RECEIVERS &#9758;189—COSTS OF RECEIVERSHIP—PARTIES LIABLE.

Where a receivership is procured illegally, the costs of the receivership may be taxed against the complainant procuring the appointment of the receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 379, 380; Dec. Dig. &#9758;189.]

---

&#9758;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. RECEIVERS ☞189—COSTS OF RECEIVERSHIP—PAYMENT FROM PROPERTY.
    Where the court appointing a receiver had no jurisdiction, it cannot claim jurisdiction over the property seized without jurisdiction, and pay costs and expenses of the receivership therefrom.
    [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 379, 380; Dec. Dig. ☞189.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by the First National Bank of Madison and others against Richard S. Hawes and others. From a decree in favor of complainants, defendants appeal. Reversed and remanded, with instructions.

C. C. Le Forgee, of Decatur, Ill. (Francis R. Wiley, of Decatur, Ill., on the brief), for appellant McGinley.

James C. Jones and Frank H. Sullivan, both of St. Louis, Mo. (Lon O. Hocker, of St. Louis, Mo., on the brief), for other appellants.

Thomas B. Harlan, of St. Louis, Mo. (Matthew G. Reynolds, John A. Hope, and Chase Morsey, all of St. Louis, Mo., on the brief), for appellees.

Before CARLAND, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

CARLAND, Circuit Judge. On July 3, 1914, John E. Franklin of St. Louis, Mo., owed, either directly or as an indorser, nearly $1,000,000, to more than 100 banks in St. Louis and surrounding territory. There was a meeting of his creditors at which his financial condition was considered. In preference to bankruptcy or a receivership, the creditors and Franklin decided that a trust agreement whereby the latter should turn over all his property to a committee in trust for his creditors should be executed. The committee agreed upon was as follows: Samuel C. McCluney, a dealer in commercial paper, and who had sold about $160,000 of Franklin paper to country banks and represented them therein; Richard S. Hawes, vice president of the Third National Bank of St. Louis, which held about $50,000 of Franklin paper, and was correspondent for some of the country banks carrying such paper; Leonidas S. Mitchell, an officer of the National Bank of Commerce, which was carrying about $165,000 of the paper mentioned and represented other country banks carrying the same; August E. Brooker, a banker, who represented banks with claims amounting to about $40,000, and August Schlafly, a banker and large real estate owner who did not represent any claims against Franklin, but was his personal friend. Unless the creditors should accept this plan with unanimity, or nearly so, it could not be put into execution.

About August 15, 1914, all but 10 or 15 of the direct creditors had executed the trust agreement. Thereupon the committee above mentioned executed it and undertook the trust. The trust agreement was finally executed by 113 creditors, constituting practically all of the direct creditors and a large majority of the indirect creditors. The complainants in this case executed it. There were three parties to the agreement: Franklin as party of the first part, the committee above

mentioned, party of the second part, and the creditors of Franklin, parties of the third part. The agreement occupies nine printed pages of the record, and for obvious reasons cannot be set out here, nor is it necessary to do so. The agreement provided that Franklin should transfer all of his property to the committee and that the committee should have the following power:

"The committee shall have the authority to hold, manage, control, sell, operate, rent, and lease the property transferred or conveyed to it; to prosecute or defend any suit at law or equity affecting the title to said property, or in any wise relating thereto, and to settle, arbitrate, or compromise any such suit or any matter pertaining to the property transferred or conveyed to it, or which, by the terms of this agreement, should, in the opinion of the committee, have been so transferred or conveyed; to pay the interest or principal of any mortgage, incumbrance, or lien now existing or hereafter created against said property; to pay all taxes or special assessments levied upon said property; to sell any or all of said property for cash or for notes, and upon such terms and conditions and in such parcels as it may deem best; to borrow, from time to time, any sums of money, and to secure the repayment of the same by charge, pledge, mortgage, deed of trust, or other instrument in writing upon the property, real or personal, or any of it, conveyed and transferred to it by said Franklin, and any and all sums so borrowed shall take priority over the claims of the depositors to the property held by the committee or the amounts realized therefrom; to pay off and cause to be released and canceled any indebtedness now or hereafter existing against said property; to bid or refrain from bidding at any sale of any of said property, and to hold any property purchased by it, either in its own name or in the name of any person or corporation nominated by it; to return to said Franklin and his legal representatives any property which, in the opinion of the committee, cannot be realized on for the benefit of the creditors; and, in general, to exercise over the property conveyed and transferred to it, or its nominee, the control, power, and authority of absolute owner, save and except that the funds realized by it shall be applied by the committee as hereinafter provided."

The agreement also contained the following provision:

"The depositors agree that they will not, so long as this agreement remains in effect, institute, join in, or become parties to any proceeding at law or equity, or special proceeding in any court, for the purpose of enforcing their claim against the first party, or procuring any settlement or distribution of any of the property of the first party other than by the committee as herein provided."

The committee was empowered to sell all property and distribute the proceeds to creditors and were to return any surplus that might remain to Franklin. Franklin was also entitled to notice of sale of all collateral either by the parties holding the same or by the committee. The Third National Bank was constituted a depository where creditors might deposit their claims and the papers evidencing the same. For the more convenient handling of the property conveyed Edward W. Labitzke was to take the title to the real estate conveyed by Franklin under the agreement as agent of the committee. On April 16, 1915, the following memorandum of agreement was executed by August Schlafly, as chairman of the Franklin creditors' committee, and one William McGinley:

"This memorandum of agreement, entered into this 16th day of April, 1915, between August Schlafly, chairman of the Franklin creditors' committee, acting for and duly authorized by said committee, and William McGinley:

"(1) Said committee will sell to McGinley, or his nominees, what are known

as the Franklin lands, in Pemiscot county, Missouri, being the lands described in two deeds from Franklin to Edward W. Labitzke, and the said McGinley agrees to buy said lands on the following terms: Twenty-five thousand dollars ($25,000.00) payable on April 19, 1915, of which ten thousand dollars ($10,000.00) shall be cash and fifteen thousand dollars ($15,000.00) shall be the note of said McGinley, payable in twenty (20) days and secured by collateral satisfactory to said committee; the balance of said purchase price shall consist of the note of said McGinley, or his nominee, secured by a mortgage on the lands; said note shall be for the sum of two hundred and seventy-five thousand dollars ($275,000.00), less the amount of the principal due on the three mortgages now on the lands, being approximately one hundred forty thousand dollars ($140,000.00), and said note shall be for approximately one hundred thirty-five thousand dollars ($135,000.00); said note shall bear five per cent. (5%) interest and shall be due January 1, 1916.

"(2) The above agreement is subject to the execution of a contract containing necessary provisions for defects of title, adjustment of interests on mortgages, and other conditions, which contract shall be in form satisfactory to the attorney for the committee and to said McGinley, and shall be executed on April 19, 1915.

"(3) If the committee shall on or before five o'clock on Monday, April 19, 1915, desire to rescind this contract they may do so by paying the said McGinley the sum of ten thousand dollars ($10,000.00).

"Executed in duplicate, at St. Louis, Missouri, this 16th day of April, 1915.

                          "August Schlafly,
        "Chairman of the Franklin Creditors' Committee.
                          "Wm. McGinley."

On April 19th the following memorandum was executed by the same parties:

"Date of April 19, 1915, wherever it occurs in this contract, changed by mutual consent to April 20, 1915; otherwise, contract in full force and effect.

                          "Wm. McGinley.
                          "August Schlafly,
                          "Chairman J. E. Franklin, Com."

At about the time the memorandum of agreement, dated April 16, 1915, was signed the original bill in this case was filed. The bill does not appear in the record, but, as it stopped any further proceedings under the memorandum, we infer that it was filed about the date thereof. On April 27, 1915, an amended bill was filed which appears in the record.

From the amended bill we learn that the action was brought by the First National Bank of Madison and the German State Bank, both citizens of Illinois, and the Bank of Tuckerman, a citizen of Arkansas, against John E. Franklin, who executed the agreement of July 3, 1914, R. S. Hawes, August Schlafly, August E. Brooker, Samuel C. McCluney, and L. S. Mitchell, constituting the committee hereinbefore mentioned, Irvin V. Barth, Third National Bank, and Edward W. Labitzke, all alleged to be citizens of Missouri. The bill was dismissed as to Barth and as to John E. Franklin, who was never served with process nor appeared in the action. Appellees allege that they are general creditors of Franklin in the aggregate sum of $17,100. The bill was filed by them in their own behalf and all other creditors of Franklin, as beneficiaries of the trust agreement, who might be willing to join therein and bear their proportional part of the expenses of the litigation. The bill charged no fraud against the trustees, but alleged mismanagement on their part. It contained the following prayer:

"Wherefore plaintiffs pray that this honorable court assume control of said trust and administer the same through its own officers and agents, and that said Franklin be adjudged insolvent; that said Third National Bank of St. Louis act upon no orders or directions except the same be made by this honorable court; that said Edward W. Labitzke be enjoined from making conveyance of any property, real or personal, standing in his name or under his control as the agent or nominee of said committee, except by order of this court; that the defendants R. S. Hawes, August Schlafly, August E. Brooker, Samuel C. McCluney, L. S. Mitchell, and Irvin V. Barth be ordered to make due, full, and proper account of their acts and doings under and by virtue of said agreement of July 3, 1914, and that they, and each of them, be enjoined from making any conveyance of the so-called Pemiscot county, Mo., lands, pursuant to the alleged contract with William McGinley or otherwise, or from in any manner disposing of or dealing with any of the assets in their hands, except upon the order of this honorable court; that said defendants, acting as said trustees, and each of them, be required to show cause why said alleged contract with the said William McGinley should not be set aside and held for naught; that said contract be set aside and held for naught; that this court order a public sale of said Pemiscot county land upon such terms and conditions as the court may determine; and for such other and further relief as to the court may seem just and proper."

On May 3, 1915, William McGinley, party to the memorandum agreement of April 16, 1915, obtained leave to file and filed his intervening petition. McGinley was and is a citizen of Illinois. May 4, 1915, counsel for appellants moved the court to dismiss the bill for want of jurisdiction urging as a ground for the motion that William McGinley, who had intervened, was an indispensable party to the action, and that it appeared from his petition that he was a citizen of Illinois, of which state the First National Bank of Madison and the German State Bank, two of the complainants, were citizens. This motion was denied on May 17, 1915. On May 12, 1915, a supplemental allegation was permitted to be added to the bill to the effect that if the court should find a receiver should be appointed complainants were prepared to furnish or cause to be furnished a sum not exceeding $160,000 to be used in protecting the trust estate and financing the receivership. The case came on for hearing on the merits and as a result thereof on May 19, 1915, it was adjudged that the appellants Richard S. Hawes, August Schlafly, August E. Brooker, Samuel C. McCluney, and Leonidas S. Mitchell, whether acting individually or as a committee, should not deliver to intervener William McGinley, or his nominee, any deed or deeds conveying what are known as the Franklin lands in Pemiscot county, Mo., and should not pay him any money out of assets in their hands belonging to the Franklin trust estate, and each of them were ordered not to make any conveyance of said lands, except to the receiver to be appointed by the court; that said committee convey or cause to be conveyed on or before the 29th day of May, 1915, by deed properly executed, acknowledged, and delivered to said receiver the so-called Franklin lands, being about 8,500 acres, located in Pemiscot county, state of Missouri, and that they convey or cause to be conveyed to such receiver any other lands held by them or under their control as such committee; that said committee on or before the 29th day of May, 1915, transfer and deliver to such receiver all money, stocks, bonds, promissory notes, mortgages, leases, contracts, deeds, choses in action, documents, ab-

stracts of title, correspondence, records, and papers belonging and appertaining to or constituting said trust estate or any part thereof, whether in their possession or under their control; and that they put such receiver in full possession and control of all the real and personal property constituting such ·Franklin trust estate. It was further ordered, adjudged, and decreed that Richard S. Hawes, August Schlafly, August E. Brooker, Samuel C. McCluney, and Leonidas S. Mitchell, and each of them, be removed and discharged as such committee and trustees, and that they be divested of all power, right, title, and interest in and to said trust estate; that they, and each of them, and their attorneys and agents, be perpetually enjoined and restrained from further acting as such committee, or as such trustees, and from exercising any control of, over, or concerning the said trust estate, or any power or authority under said agreement, except to carry into effect the provisions of the decree, and from in any manner interfering with the administration of said trust estate by the receiver named in said decree.

It was further ordered, adjudged, and decreed that Frank J. Cunningham, of Pemiscot county, state of Missouri, be appointed receiver to take charge of and administer the trust estate and execute the trust established by John E. Franklin under the said agreement of July 3, 1914; that the defendant Edward W. Labitzke, on or before May 29, 1915, convey to said Cunningham, receiver, by proper deed or deeds duly executed, acknowledged, and delivered, the land heretofore conveyed to him by John E. Franklin, or any one acting for Franklin, being what are known as the Franklin lands, and consisting of about 8,500 acres located in Pemiscot county, Mo., the record title of which said lands is now in the said Labitzke; that said Labitzke, on or before May 29, 1915, transfer and deliver unto the said Cunningham all money, rents, deeds, leases, abstracts of title, correspondence, papers, and other documents in possession or under his control belonging or appertaining to such land or trust estate; and that said Labitzke be perpetually enjoined and restrained from otherwise conveying said property or any part thereof, and from otherwise exercising any control over or concerning any such real estate or any other property held by him, belonging or appertaining to the said Franklin trust estate. It was further adjudged that, should the defendants acting as a committee, or should the said Labitzke, or either of them, fail to make the conveyances and transfers ordered on or about May 29, 1915, then that the decree entered should operate to pass to and vest in the receiver the title to all such property. It was further adjudged that the Third National Bank of St. Louis, on or before May 29, 1915, deliver to said Cunningham all money, stocks, bonds, promissory notes, mortgages, leases, contracts, deeds, documents, records, correspondence, papers, now in its possession, or which might come into its possession or under its control, belonging to or appertaining to said Franklin trust estate. It was further adjudged that said Third National Bank be perpetually enjoined and restrained from acting upon any orders or directions of the committee created by the trust agreement. It was further adjudged that the money, checks, or other property

lodged with any of the defendants by William McGinley in contemplation of the purchase of said Franklin lands, located in Pemiscot county, Mo., were no part of the said Franklin trust estate, and defendants were at liberty to dispose of the same as they might be advised. It was also adjudged that the intervening petition of William McGinley be dismissed.

[1] In the consideration of this case we are met at the threshold with the question of jurisdiction. It is urged by counsel for appellants that John E. Franklin and William McGinley were both indispensable parties, without whom the court below was without jurisdiction to render the judgment which it entered. On account of this contention it has been necessary to state the prayer of the bill and the relief granted. The classes of parties to a bill in equity have often been stated by the Supreme Court and by this court. Minnesota v. Northern Securities Co., 184 U. S. 236, 22 Sup. Ct. 308, 46 L. Ed. 499; Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; California v. Southern Pacific Co., 157 U. S. 257, 15 Sup. Ct. 591, 39 L. Ed. 683; Gregory v. Stetson, 133 U. S. 579, 10 Sup. Ct. 422, 33 L. Ed. 792; Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635; Byers v. McAuley, 149 U. S. 618, 13 Sup. Ct. 906, 37 L. Ed. 867; Barney v. Baltimore City, 77 U. S. (6 Wall.) 280, 18 L. Ed. 825; Sioux City T. R. & R. Co. v. Trust Co. of N. A., 82 Fed. 124, 27 C. C. A. 73 (8th Cir.); Chadbourne v. Coe, 51 Fed. 479, 2 C. C. A. 327 (8th Cir.). In Minnesota v. Northern Securities Co., supra, in speaking of these classes, it was said:

"They are: (1) Formal parties. (2) Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. (3) Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience."

The question, then, is whether the interest in the controversy of Franklin and McGinley was of such a nature that a final decree could not be made in the action without either affecting that interest or leaving the controversy in such condition that its final determination might be wholly inconsistent with equity and good conscience. The bill in its allegations is much broader in its scope than the evidence at the trial. The evidence at the trial was largely confined to the Pemiscot county lands, and the principal fault found with the trustees under the Franklin agreement was that the trustees had attempted to sell these lands to McGinley for much less than they were worth. Evidence was given both in support of the sufficiency of the consideration promised to be paid by McGinley and as to its insufficiency. We think it may be truly said after an examination of the evidence in the record that the only property of any practical value conveyed by Franklin to the trustees or to Labitzke for them was the 8,500 acres of Pemiscot county lands.

The bill did not pray for a removal of the trustees, but it was claimed that they were mismanaging the trust, and the court was asked to take the property into its possession and manage the trust itself through its officers. McGinley was allowed to intervene, but in the final decree his intervening petition was dismissed. It is said that the court did not cancel the memorandum of agreement between McGinley and Schlafly. It did not do it in terms, but what it did do, if the decree is to stand, absolutely nullified the agreement of April 16, 1914. McGinley's rights have been adjudicated, although his intervening petition has been dismissed. The committee under the trust agreement has his $25,000 to use as they are advised. So far as McGinley is concerned, the decree entered, if he was not in court, would be wholly inconsistent with equity and good conscience. The bill prayed that the contract with McGinley be vacated and set aside. When he voluntarily appeared and was allowed to intervene, then a controversy was presented not within the judicial power of the court, as he was a citizen of the same state as the two other complainants. With McGinley out of court, no decree affecting his interest could be made, and in court he ousted the court of jurisdiction.

It is claimed by counsel for appellees that when William McGinley intervened in the action he did not by such intervention oust the court of its jurisdiction. The following cases are cited in support of this contention: Phelps v. Oaks, 117 U. S. 236, 6 Sup. Ct. 714, 29 L. Ed. 888; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Hardenbergh v. Ray, 151 U. S. 112, 14 Sup. Ct. 305, 38 L. Ed. 93; People of Porto Rico v. Ramos, 232 U. S. 627, 34 Sup. Ct. 461, 58 L. Ed. 763. These cases do not support counsel's contention. Without reviewing these cases, it is sufficient to say that they establish a well-known rule in federal equity practice, namely, that when a stranger to the action, or one who is not an indispensable party thereto, intervenes therein, in order to protect his own interest, his citizenship will not oust the court of jurisdiction; but this is on the theory that the court already has jurisdiction of the cause of action and of the parties and can proceed to judgment without the party who seeks to intervene. But in the case at bar both by the relief prayed for and the relief granted McGinley was an indispensable party, without whom the court could not render the decree which it did. He voluntarily appeared, but his appearance was fatal to the court's jurisdiction for the reasons stated.

[2] Whatever might be said as to Franklin being an indispensable party to an action simply to remove one or more of the trustees for misconduct under the trust agreement and to appoint new trustees in their place, we think when it was prayed in the bill that the court reach out through its receiver and seize all of the trust property for the purpose of managing the trust itself with all the attendant expenses of a receivership, and this prayer is followed by a decree which practically disemboweled the whole trust agreement, it clearly appears that Franklin was an indispensable party to the action. The appellees were general creditors, and without proof of their claims they had no right to complain. We do not see how these claims could be established with-

out Franklin in court. Chadbourne v. Coe, 51 Fed. 479, 2 C. C. A. 327 (8th Cir.). The trust agreement did not establish these claims, nor does it help the situation when it is said Franklin does not object. There is only one way to determine whether he does or not, and that is by making him a party to the action.

[3] It is said no objection was made below as to the absence of Franklin, but it is made here; moreover, we must notice it ourselves, if it is jurisdictional. If the court below had no jurisdiction it could not decide the merits of the controversy. Nor can we discuss them. There seems to be no alternative but to reverse the decree below and remand the case to the District Court, with instructions to cause all property seized by its receiver to be returned to the persons from whom it was taken, by proper conveyances if necessary, and to tax the costs of the action and the costs and expenses of the receivership against the appellees, complainants below.

[4] Where a receivership is procured illegally, the costs of the receivership may be taxed against the complainant procuring the appointment of such receiver. Machinery Co. v. Hughes, 195 Ill. 413, 63 N. E. 186, 59 L. R. A. 673; McAnrow v. Martin, 183 Ill. 467, 56 N. E. 168; Highley v. Deane, 168 Ill. 266, 48 N. E. 50; State v. People's U. S. Bank, 197 Mo. 605, 95 S. W. 867; Cutter v. Pollock, 7 N. D. 631, 76 N. W. 235; Ephraim v. Pacific Bank, 129 Cal. 589, 62 Pac. 177; High on Receivers (3d Ed.) § 796; Beach on Receivers, § 774.

[5] In the case at bar, the court, being without jurisdiction, has no property with which to pay any one, and hence is not ruled by Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 Sup. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155. Courts may not seize property without jurisdiction, and then claim jurisdiction over the property because it is in the possession of the court.

Reversed and remanded, with instructions.