## FRYER et al. v. WEAKLEY.

(Circuit Court of Appeals, Eighth Circuit. October 30, 1919.)

No. 5398.

1. EQUITY ☞422—FINAL DECREE WHERE INTERESTS OF PERSONS NOT PARTIES WILL BE AFFECTED.

A court of equity ought not to and will not render a final decree, which cannot be made without seriously affecting the interest of one who is not a party to the suit, or without leaving the controversy pleaded in such condition that its final determination might be inconsistent with equity and good conscience.

2. COURTS ☞310—INDISPENSABLE PARTIES AFFECTING JURISDICTION OF FEDERAL COURT.

Where a resident of Tennessee, who had been granted life estate in Missouri lands, the grant at the same time appointing a resident of Tennessee as agent and attorney, authorizing him to lease the lands, collect the rents, and deliver to the life tenant one-half of the proceeds, sued in the federal District Court for Missouri tenants holding under such agent, *held* that, as the agent, who was a resident of Tennessee, was an indispensable party, the federal court for Missouri was without jurisdiction, particularly where the agent, the resident of Tennessee, and one to whom he had sold his beneficial interest, were substituted as defendants.

3. COURTS ☞313—SUBSTITUTION OF PARTIES AFFECTING JURISDICTION OF FEDERAL COURT.

Where residents of Tennessee were substituted as defendants in a suit wherein plaintiff, a resident of Tennessee, sued residents of Missouri, *held* that, though the suit involved title to Missouri land, the federal court for Missouri was without jurisdiction.

4. QUIETING TITLE ☞13—NONPOSSESSION OF DEFENDANT AS ESSENTIAL.

Nonpossession by defendants is an essential to the maintenance in a federal court of an action to quiet title; so, where defendants were in possession by tenants claiming under them, plaintiff cannot maintain a suit to quiet title.

5. QUIETING TITLE ☞4—ADEQUATE REMEDY AT LAW.

Where plaintiff had an adequate remedy at law, either by ejectment, or by actions against defendant's tenants, or for the use of the premises, title to which plaintiff asserted was in her exclusively, action to quiet title cannot be maintained.

6. RECEIVERS ☞189—COSTS; EFFECT OF APPOINTMENT WITHOUT JURISDICTION.

Where a federal court appointed a receiver at the instance of plaintiff, though it was without jurisdiction to entertain the suit, plaintiff is responsible for the costs and expenses of the receivership, and all property seized must be redelivered to defendants.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by Bettie G. Weakley against George C. Harris and others, in which W. S. Fryer and another intervened, being substituted as defendants. From an order appointing a receiver, the substituted defendants appeal. Reversed and remanded, with directions.

This is an appeal from an order of the District Court made on December 12, 1918, appointing a receiver of a certain tract of land in Dunklin county, Mo., worth about $75,000, and of the rents and profits thereof, worth about $5,000 annually, on the petitions for such a receiver of the plaintiff below, Bettie G. Weakley, and also on the opposing affidavits of the defendants W. S. Fryer and G. L. Fryer. The defendants appealed, and they assailed the order on the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

grounds: (1) That at the time it was made the District Court was without jurisdiction of the subject-matter of and of the parties to the suit, because the plaintiff and the defendants were all citizens and residents of the state of Tennessee; and (2) that on the proof presented to the District Court the appointment of a receiver was contrary to the rules and principles of equity jurisprudence. The proof on the part of the plaintiff consisted of several affidavits made by the single affiant, T. F. King, the agent and attorney in fact of the plaintiff, to her complaint, and to her petition and supplemental petition for a receiver, and it consisted on the part of the defendants of separate affidavits of the defendants W. S. Fryer and G. L. Fryer. There was no denial of any fact alleged in the affidavits of the Fryers, except by some counter statements in the complaint or in the petitions verified by King. There is nothing in the record to indicate that King was more familiar with the facts or more truthful than either of the Fryers.

The burden of proof of the facts requisite to sustain the order for the receiver was on the plaintiff, and therefore, where King's affidavits aver, and the affidavit of one or the affidavits of both of the Fryers contradict such averment, it must be deemed to be unproved. For example: One of the pleadings verified by King alleges that each of the Fryers is insolvent; another that the plaintiff was in possession of the land when this suit was brought. Each of the Fryers avers in his affidavit that he is solvent, and that he is worth at least $6,000 above his liabilities, and W. S. Fryer testifies that he has been in possession of the land ever since the death of Dr. R. N. Fryer on April 7, 1915, and still is, together with his brother, G. L. Fryer, so in possession thereof; that he has rented it to tenants during this time, who were in possession under his leases at the time this suit was commenced, tenants who have made and delivered to him or G. L. Fryer annual rental notes payable to the plaintiff and himself, which he or G. L. Fryer have collected. The plaintiff admits and charges that the Fryers have collected these rents and have failed to account for some of them, and the Fryers have testified in their affidavits that they have collected the rents and fully accounted for·and paid over to the plaintiff her full share of them. In this state of the evidence the Fryers must be found to be solvent, and the possession of the land to have been in W. S. Fryer or G. L. Fryer through the tenants, who were in possession and were attorning and paying the rents to them, when this suit was commenced and ever since. Considering the evidence according to this rule, and laying aside matters irrelevant to the issues presented here, the pertinent facts are these:

W. S. Fryer was the nephew of G. N. Fryer, who was a capitalist. He lived with his uncle, G. N. Fryer, from 1909 until some time in 1914, when he went to Hot Springs, Ark., for his health. He had devoted his labor and energies to the development of his uncle's property, who had paid him nominal wages under an understanding between them that he would provide for him in the final disposition of his property. Pursuant to this arrangement Dr. Fryer executed and delivered a written instrument on November 13, 1913, which was recorded on November 15, 1913, whereby he leased, demised, and let to his sister-in-law, Bettie G. Weakley, the plaintiff, the land in controversy, to have after his death for her natural life only, and appointed his nephew W. S. Fryer "agent and attorney in fact to take charge of said lands after my death, and manage the same, rent out, and collect the rents, taking notes in the name of said Bettie G. Weakley and his name, and keep up the land, making necessary repairs and pay the taxes out of the rents. After all expenses are paid as above mentioned, he, the said William S. Fryer, is to have and retain one-half of the net amount of the rents as his own, and to pay to the said Bettie G. Weakley the other one-half, and make annual settlements with her."

About October 1, 1914, while W. S. Fryer was ill at Hot Springs, the plaintiff conveyed back to Dr. Fryer her interest in this land, and on the same day he executed an instrument whereby he demised, leased, and let the same land to her after his death for her natural life only, and appointed his son-in-law, T. F. King, agent and attorney in fact to do the same things W. S. Fryer was appointed to do in the instrument of November 13, 1913, and provided that he

should be allowed his necessary expenses in so doing "and any additional compensation she [the plaintiff] may see fit to allow him." On January 26, 1916, the plaintiff brought suit in equity against W. S. Fryer, in which she pleaded the instruments of November 13, 1913, and October 1, 1914, made similar allegations regarding these instruments to those made by her in this suit, and prayed that the former be adjudged void, the latter valid, and that the management and control of the land and of all the rents and profits be decreed to belong to T. F. King. On November 22, 1916, the plaintiff, through her attorneys in that suit, in consideration of $1,606 then paid to her, through her attorneys of record in that suit, by W. S. Fryer, made a written contract of compromise and settlement of all matters in controversy between them to this effect: That the instrument of November 13, 1913, should be recognized as a valid instrument with these changes: (a) That plaintiff, instead of being paid by W. S. Fryer annually one-half of the remainder of the proceeds of the rents and profits of the land after the payment of the taxes, repairs, etc., should be paid by him annually $2,750, commencing on November 15, 1917; (b) that W. S. Fryer or his agent or attorney should collect and have for his own all the rents for the years 1915 and 1916, except those which had been already received by the plaintiff, and should pay the plaintiff $115 and the cost of that suit. W. S. Fryer paid to the plaintiff's attorney of record, and she received, the $1,606, and the Dunklin county court on November 22, 1916, rendered a decree in which the terms of this compromise were embodied. Thereupon, on November 27, 1916, W. S. Fryer sold his beneficial interest, under the compromise agreement and the instrument of October 13, 1913, to G. L. Fryer for 80 acres of land and other valuable considerations. In December following the plaintiff filed a petition in the compromised suit in the Dunklin county court to set aside its decree; that petition was granted over the objection of W. S. Fryer, and he excepted to that ruling. The plaintiff then dismissed that suit, and thus deprived W. S. Fryer of his exception.

In 1917 the plaintiff brought a suit in the federal court below against W. S. Fryer and G. L. Fryer and some of the tenants on the property, in which she made the same claims that she had made in her Dunklin county suit, and that she now makes in this suit, and alleged that the Fryers had collected and appropriated to their own use $4,000 or $5,000 of the rents collected from the tenants on the property, and later she dismissed that suit. On April 17, 1917, she brought this suit against George C. Harris, C. L. Harris, Walter L. Carey, and D. C. Julian, tenants on the property, who were residents and citizens of the state of Missouri, while she was a resident and citizen of the state of Tennessee. She pleaded in her complaint the instruments of November 13, 1913, and October 1, 1914; the plaintiff's conveyance of her interest in the land to Dr. Fryer on October 1, 1914, before he executed his instrument of that date; that she took possession of the property, rented it to the defendant tenants, and put them in possession through her agent, King, after the death of Dr. Fryer, an allegation which, in view of the affidavits of the Fryers, cannot be held to have been established when the order for the receiver was made; that in 1916 W. S. Fryer and G. L. Fryer procured from the defendant tenants rental notes, wherein they agreed to pay the rent for the year 1917 to William S. Fryer and George L. Fryer, an averment regarding which the proof is that the Fryers took rental notes to the plaintiff and W. S. Fryer for the year 1917 in accordance with the exact terms of the instrument of November 13, 1913, and the compromise agreement; that the action of the defendant tenants in contracting to pay rent to W. S. Fryer and G. L. Fryer was a fraud upon the plaintiff's rights; that unless restrained by the court the defendant tenants would pay their notes, and make notes for future years, and pay the rental to the Fryers in breach of their obligation to the plaintiff to pay rent to her, allegations regarding which the weight of the evidence is that the defendant tenants would and did make rental notes to the plaintiff and W. S. Fryer, and pay them to him or to G. L. Fryer, who paid the repairs and taxes, and accounted for and paid to the plaintiff one-half the remainder of the proceeds of the rents pursuant to the instrument of November 13, 1913. The plaintiff further alleged that the defendants were insolvent. The relief the plaintiff asked was that the defendant tenants be en-

joined from paying their rental notes to the Fryers, or to any one but a receiver appointed by the court; that at the final hearing she have a decree. (a) that she is the sole owner of the land during her life; (b) that the defendant tenants have no right to pay rent to W. S. Fryer, or any other person than the plaintiff; (c) that the claim of the defendant tenants through Fryer is a cloud on her title, that it be removed, and that they be enjoined from paying any rents or executing any rental notes for future rents to Fryer, or any one but the plaintiff or her agent; (d) that the plaintiff have an accounting of rents wrongfully paid by the defendant tenants to the Fryers; and (e) that a receiver of the property and the rents due and to become due be appointed.

On April 24, 1917, the defendant tenants answered that they had no interest in the outcome of the suit, that they would pay the rents in the year 1917 and thereafter to whomsoever the court should direct them to pay them, and that the rents for 1916 had been paid. On July 14, 1917, W. S. Fryer and G. L. Fryer filed their intervening petition in this suit, in which they asserted their right to the share of the rents granted to W. S. Fryer by the instrument of November 13, 1913, and prayed that they might be made defendants in lieu of the tenant defendants. Thereupon, on the same day, by consent of the parties to the suit, the court ordered that W. S. Fryer and G. L. Fryer be permitted to intervene and be substituted in place of the tenant defendants. On February 14, 1918, the plaintiff filed a petition for a receiver. On December 6, 1918, she filed an amended petition, and on December 14, 1918, the receiver was appointed. The petitions for the receiver charge that the Fryers have rented and collected the rents of the property, and have not accounted for or paid over even one-half of the surplus proceeds thereof above the taxes, repairs, etc., according to the provisions of the instrument of November 13, 1913, while the plaintiff was and is entitled to all of that surplus under the provisions of the instrument of October 1, 1914. The weight of the evidence at the hearing, and hence the fact proved, was that the Fryers have rented the property and taken annual rental notes payable to the plaintiff and W. S. Fryer for the years 1916, 1917, 1918, and 1919, and that they had collected these rents for 1916, 1917, and 1918, had paid the taxes, etc., on the land, and had accounted for and paid over to the plaintiff all that she was entitled to receive according to the terms of the instrument of November 13, 1913, but that they had retained one-half of the surplus to which they were entitled thereunder, but which the plaintiff claims.

G. L. Fryer, of Paris, Tenn., for appellants.

J. J. Lynch, of Chattanooga, Tenn. (Allison, Lynch & Phillips, of Chattanooga, Tenn., on the brief), for appellee.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The first question in this case is: Did the court below have jurisdiction thereof? The foregoing statement of facts demonstrates the conclusion that the real issue in the case was and is whether the Fryers were entitled to one-half of the surplus rents of the land under Dr. G. N. Fryer's grant of November 13, 1913, and the compromise of 1916, in view of the reconveyance to him by the plaintiff and his granting on November 1, 1914, of all the surplus rents to the plaintiff. The real parties in interest in that issue were and are the plaintiff and King on one side, and the Fryers on the other. All these parties were and are residents of Tennessee. The plaintiff, in commencing this suit, however, was careful not to make the Fryers parties to it. She brought it against tenants in actual possession of the land under rental contracts which they made with W. S. Fryer, and for which they

had given their rental notes to him, payable to the plaintiff and W. S. Fryer, according to the provisions of Dr. G. N. Fryer's instrument of November 13, 1913, which he or his brother have collected. She prayed for a decree that she was the sole owner of the property during her natural life, that these tenant defendants had no right to pay, and should be enjoined from paying, any rents or executing any rental notes to W. S. Fryer or George L. Fryer, and that the claim of the tenant defendants through Fryer—that is to say, the instrument of November 13, 1913—be adjudged a cloud upon her title and be removed. There are two other prayers in the complaint—that the plaintiff have an accounting with the tenant defendants of the amount of rents wrongfully paid by them to the Fryers for the year 1916, and that a receiver be appointed; but these prayers are negligible, because there was no allegation in the complaint that these tenant defendants had made any such payments, and because the grant of each of these prayers was conditioned by the adjudication prayed that the claim of Fryer of one-half of the surplus rents and to the management and control of the property under the instrument of November 13, 1913, through which the tenant defendants claimed, should be adjudged invalid.

[1, 2] There is a fundamental principle of equity jurisprudence that a court of equity ought not to and will not render a final decree, which cannot be made without seriously affecting the interest of one who is not a party to the suit, or without leaving the controversy pleaded in such a condition that its final determination might be inconsistent with equity and good conscience. As the indispensable condition of the decree sought from the court below against these tenant defendants was its adjudication that the grant of the management and control of the property and of one-half of the surplus rents to W. S. Fryer by the instrument of November 13, 1913, was ineffectual, and that his claim thereto was unfounded, and as she demanded a perpetual injunction against any agreement to pay and any payment of any rents to him or to G. L. Fryer by any of these tenant defendants, there is no escape from the conclusion that no final decree against those defendants could be rendered in favor of the plaintiff upon this complaint without substantially affecting the interest of the Fryers in the subject-matter of this litigation. While such an adjudication and such a decree of an injunction would not be res adjudicata as against the Fryers while they were not parties to the suit, it would nevertheless deprive them of all the benefits of their claim, of all the fruits of the grants to W. S. Fryer on which they relied, at least until they should bring independent suits against these tenants and recover judgments or decrees against them upon the rental contracts.

If there were any doubt of the proposition that the Fryers and King and the plaintiff were the real parties to this controversy, and the decree sought against the defendant tenants would seriously affect their rights, the subsequent course of the parties to this suit and the subsequent action of the court below must dispel it. The tenant defendants answered the plaintiff's complaint that the rents for the year 1916

had been paid in full, that they had no interest in the outcome of the suit, and that they would pay the rents of 1917 and those arising thereafter to whomsoever the court should direct. About three months after this answer was filed, W. S. Fryer and G. L. Fryer filed a petition, in which they set forth their interest in the property, the rents, and the controversy, and prayed that they be permitted to intervene and to defend this suit in their own right in lieu of the defendant tenants, and the court below granted their petition and ordered that they "be permitted to intervene and be substituted as defendants in place of the defendants named in the bill." Thereafter the real parties in interest in this controversy, the plaintiff, King, and the Fryers, were the parties to this suit, and each of them was a citizen and resident of the state of Tennessee. So it is that W. S. Fryer and G. L. Fryer were indispensable parties to the suit below by the plaintiff here, without whose presence as parties thereto she could not maintain it. As they were and are citizens and residents of the same state as the plaintiff, and as their joinder as parties would necessarily oust the jurisdiction of the court, this suit cannot be maintained in the federal court, and the order appointing a receiver was made without jurisdiction.

[3-5] If the suggestion occurs of the possibility of the maintenance of this suit as a suit to quiet title against the tenant defendants without joining the Fryers, the answer is (1) that since the substitution of the Fryers for the tenant defendants, and therefore at the time of the appointment of the receiver, all the parties to the suit and all the real parties to the controversy have been and are residents and citizens of the same state; (2) that nonpossession by the defendants is essential to the maintenance in a federal court of an action to quiet title, and the possession was in the defendant tenants holding under the Fryers when this action was commenced and ever since, and has not been during that time in the plaintiff; and (3) that the plaintiff had an adequate remedy at law, either by ejectment for the possession of the land or at the plaintiff's option by an action on the leases between her and the defendant tenants, if there were such leases, and, if not, for the use of the premises.

[6] The conclusion is that this case falls clearly without the jurisdiction of this court, under the opinion of Judge Carland in Hawes v. First National Bank, 229 Fed. 51, 143 C. C. A. 645. The order of the court below appointing the receiver must therefore be reversed, and the case must be remanded to the District Court, with directions to cause all the moneys and property and all the proceeds of the property seized or collected by the receiver to be paid over and delivered to the defendants W. S. Fryer and G. L. Fryer, and to tax the costs and expenses of the receiver against the plaintiff below. The court, being without jurisdiction, has no property to pay them. As was well said by Judge Carland in the Hawes Case:

"Where a receivership is procured illegally, the costs of the receivership may be taxed against the complainant procuring the appointment. * * * Courts may not seize property without jurisdiction, and then claim jurisdiction over the property because it is in the possession of the court."