**HAZELTINE RESEARCH CORPORATION et al. v. FREED–EISEMANN RADIO CORPORATION.**

(District Court, E. D. New York. June 9, 1924.)

**1. Courts ⟨⟩308—Federal court without jurisdiction, where any indispensable party incapable of suing any opposite party.**

Where any indispensable party to a suit is incapable of suing, in a federal court, any party on the opposite side, the court is without jurisdiction.

**2. Courts ⟨⟩310—"Indispensable parties" defined.**

As distinguished from formal or proper parties, "indispensable parties" are those having such an interest that a final decree should not be made without their presence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indispensable Party.]

**3. Courts ⟨⟩317—Federal court may rearrange parties in support of jurisdiction.**

In support of its jurisdiction, a federal court may arrange the parties on one side or the other according to their interests or the facts, regardless of the place they occupy in the pleadings.

**4. Courts ⟨⟩318—Parties not indispensable may be stricken out to sustain jurisdiction.**

If parties joined as complainants or defendants are such that a complete and final determination of the issues may be had without them, and without affecting, as a matter of common sense and equity, their legal or equitable interests, they are not indispensable parties, their presence will not defeat the jurisdiction of the court, and they may be stricken out.

**5. Courts ⟨⟩310—Stockholders of complainant held not indispensable parties.**

The owner of patents and trade-marks granted to complainant corporation an exclusive license thereunder, with the right to grant nonexclusive sublicenses to its stockholders. It contracted to pay royalties for itself and sublicensees, who paid directly to it, and also to prosecute suits for infringements. It granted a sublicense to defendant corporation, which by the terms of the contract became a stockholder; complainant agreeing to prosecute and defend all suits relating to the patents or trade-marks, at its own expense, retaining the proceeds, if any. Held, that to a suit on such contract other sublicensees having similar contracts, though also stockholders of complainant, were not indispensable, nor even proper, parties.

In Equity. Suit by the Hazeltine Research Corporation and others against the Freed–Eisemann Radio Corporation. On motion to dismiss bill for want of jurisdiction, and motion by complainant to strike out certain complaints. Motion to strike out granted, and motion to dismiss denied.

See, also, 3 F.(2d) 172.

Pennie, Davis, Marvin & Edmonds, of New York City, for plaintiffs.

Koenig, Sittenfield & Aranow, of New York City, for defendant.

INCH, District Judge. This is a motion to dismiss the bill of complaint in an equity action, at the opening of the trial of the issues raised by the bill and the answer of defendant, on the ground that this court is without jurisdiction, for the reason that no diversity of citizenship exists, between all of the plaintiffs and the defendant. Jurisdiction depends here on the required diversity of citizenship.

[1] Where any indispensable party to a case is incapable of suing, in the federal court, any party on the opposite side, the court is without jurisdiction. The defend-

ant claims that all of the parties plaintiff are indispensable parties plaintiff, and that, as there is a lack of diversity of citizenship between some of the said parties plaintiff and the defendant, the motion must be granted.

In order to avoid, on one hand, the postponing of a trial on the merits desired by both parties, and, on the other hand, the entry of what would be a void judgment, should this court have no jurisdiction, which both parties desire to avoid, and in view of the earnest and able argument in favor of the motion by the distinguished counsel for defendant, with his long experience in federal procedure, this court feels that the question requires a most careful consideration. This is the sole excuse for an opinion of this length.

In the bill of complaint the parties plaintiff are divided into two groups. All parties are corporations and are treated as citizens of their respective states. Louisville R. R. Co. v. Letson, 2 How. 550, 11 L. Ed. 353. The first group of plaintiffs is the Hazeltine Research Corporation, a citizen of the state of Delaware, and the Independent Radio Manufacturers, Inc., also a citizen of the state of Delaware. The second group of plaintiffs is American Radio & Research Corporation, a citizen of the state of Delaware, F. A. D. Andrea, Inc., a citizen of the state of New York, Broadcast Manufacturers, Incorporated, a citizen of the state of New Jersey, Eagle Radio Company, a citizen of the state of New Jersey, Garod Corporation, a citizen of the state of New Jersey, Howard Manufacturing Company, Inc., a citizen of the state of Illinois, William J. Murdock Company, a voluntary association organized under the laws of the state of Massachusetts, Radio Service Laboratories, Inc., a citizen of the state of New Jersey, Stromberg-Carlson Telephone Manufacturing Company, a citizen of the state of New York, R. E. Thompson Manufacturing Company, a citizen of the state of New Jersey, Ware Radio, Inc., a citizen of the state of New York, and the Work-Rite Manufacturing Company, a citizen of the state of Ohio.

The defendant is a citizen of the state of New York. It will be seen, therefore, as to the first group of plaintiffs, the required diversity of citizenship exists. As to the second group of plaintiffs, a different situation presents itself, for among them are three citizens of the same state as that of the defendant, to wit, the state of New York. It would follow, therefore, if the claim of the defendant that these plaintiffs are also indispensable parties plaintiff is correct, that this court would not have jurisdiction.

[2] Parties to a bill in equity are usually considered as belonging to one of three kinds: Formal parties; proper parties, because they have an interest of some sort, and and therefore allowed to be before the court, in order that it may finally determine the controversy in a comprehensive and complete way; and indispensable parties, who not only have some interest in the controversy, but such an interest that a final decree should not be made without their presence. Minnesota v. Northern Securities Co., 184 U. S. 199, 22 S. Ct. 308, 46 L. Ed. 499; Hawes v. Madison First National Bank, 229 F. 51, 143 C. C. A. 645; Fed. Statutes Annotated, vol. 4, p. 957.

[3] Passing for the moment the question of whether this second group of plaintiffs are indispensable plaintiffs and taking up the question of whether or not they might be termed simply indispensable parties, it would then be possible for the court itself to arrange the parties on one side or the other according to their interests or the facts, regardless of the places they occupy in the pleadings as plaintiffs or defendants, in order to retain jurisdiction. Gage v. Riverside Trust Co. (C. C.) 156 F. 1002; Helm v. Zarecor, 222 U. S. 32, 32 S. Ct. 10, 56 L. Ed. 77; Sharpe v. Bonham, 224 U. S. 242, 32 S. Ct. 420, 56 L. Ed. 747. It is plain, however, that each one of the plaintiffs in the second group have identical interests, if they have any interest, in this suit, and hence this court cannot distinguish between any one of this group of plaintiffs, but must put either all or none in their proper place.

As has been noted, one of this second group of plaintiffs, to wit, the American Radio & Research Corporation, is a Delaware corporation, and if this court should arrange this second group of plaintiffs as defendants, we would then have the remaining plaintiffs citizens of Delaware and one of the defendants a citizen of Delaware, and thus this court would be as much without jurisdiction for the reason assigned as it would be if the arrangement of the parties in the pleadings remained. If such arrangement must defeat jurisdiction, the bill will be dismissed. Mann v. Gaddie, 158 F. 42, 88 C. C. A. 1.

[4] There remains, therefore, but the single question of whether or not this second group of plaintiffs are indispensable parties plaintiff. If they are indispensable, whether placed as plaintiffs or defendants, the bill must be dismissed. If they are such par-

ties that a complete and final determination can be had without them, and without affecting as a matter of common sense and equity the real legal or equitable interests of all of this second group, they may be stricken out. Connolly v. Taylor, 2 Pet. 556, 7 L. Ed. 518. This requires, even at the risk of making this opinion unduly long, a brief examination of the bill and the issue between the parties.

[5] This is an action relating solely to a written contract between the plaintiff Independent Radio Manufacturers, Inc., and the defendant, Freed-Eisemann Radio Corporation. These two corporations are the sole parties to the contract. The complaint alleges a breach of this contract by the defendant, and seeks the equitable relief of having it canceled and the defendant enjoined from further proceeding under it, or enjoying any of the rights given by it, and for an accounting for any royalties unpaid under it due plaintiff. The above statement, if accurate, would seem to indicate that the only indispensable parties before the court, in order for it to completely and fairly determine the matter and do justice, are these two parties to the contract.

A number of cases cited by the counsel for the defendant are just such cases, where the court held that the parties to a written contract were indispensable, and such authorities do not seem to conflict with the question of jurisdiction raised here, for here all the parties to the written contract in question are before the court, and between them the required diversity of citizenship exists as plaintiff and defendant.

The learned counsel for the defendant, however, insists that the above is not an accurate statement of the situation. In substance it appears that Louis A. Hazeltine, a citizen of New Jersey, claimed to be the inventor and sole and exclusive owner of certain inventions, patents for which had been applied for, relating to radio apparatus, and of certain trade-marks, consisting of the words "Neutrodyne," etc., applicable thereto. On the 17th day of February, 1923, Hazeltine entered into an agreement with the plaintiff the Independent Radio Manufacturers, Inc., a Delaware corporation, by which agreement Hazeltine granted an exclusive license to manufacture and sell radio receiving apparatus, embodying the inventions above mentioned, together with the exclusive right in and to the said trade-marks, and also granted to the said corporation the right and privilege of sublicensing, under the license granted and subject to the terms

and conditions thereof, such individuals, copartnerships, or corporations as were then stockholders in that corporation, or which might become stockholders therein, or nonstockholders as said corporation might desire, upon such terms and conditions as that corporation might impose in such sublicense agreements; it being understood that such sublicenses should be nonexclusive, nondivisible, and nontransferable by operation of law or otherwise.

For every sublicense issued, the corporation agreed to pay Hazeltine a sum of money as an advanced royalty. Hazeltine enjoyed certain reservations, and the corporation also agreed for itself and its sublicensees to pay a royalty. The royalties payable by the sublicensees were to be paid directly *to the corporation,* and *accounted for by it* to Hazeltine. A fund was provided for litigation purposes, to be contributed to by Hazeltine and the sublicensees, and the corporation agreed for itself and its sublicensees, and in case of any infringement of the Hazeltine patents, etc., the corporation, upon proper authority from its board of directors, agreed to bring suit, either on behalf of and in the name of Hazeltine or any of the sublicensees.

Pursuant to this agreement this Independent Radio Manufacturers, Inc., then proceeded to enter into separate sublicense agreements with various parties, such as an incorporated association in Massachusetts and various corporations in New York, New Jersey, Illinois, and Ohio. The agreements were alike; the difference only being the date of making and the parties. But nevertheless each was a distinct and separate agreement, and related to an independent business to be carried on by the party of the second part.

On May 5, 1923, one of these sublicense agreements was entered into between the plaintiff Independent Radio Manufacturers, Inc., and the defendant, Freed-Eisemann Radio Corporation. This agreement provided that the Freed-Eisemann Radio Corporation should have a nonexclusive, nontransferable, nondivisible license to manufacture and sell in the United States and elsewhere, apparatus, embodying the invention set forth in the said applications for letters patent and any and all improvements on said inventions, coming within the terms of the agreement above mentioned between the Independent Radio Manufacturers, Inc., and said Hazeltine, and further granted to the said Freed-Eisemann Radio Corporation the right to use the trade-marks "Neutrodyne," etc.,

on apparatus of *its* manufacture made and sold in accordance with the terms of this agreement, provided, however, that the trademarks should be applied solely to and used only in connection with the invention, etc. The Freed-Eisemann Radio Corporation on its part agreed to pay certain royalties, etc., and that all apparatus manufactured and sold by it under the agreement should be marked "licensed" by the Independent Radio Manufacturers, Inc., under Hazeltine patent, etc., and should further be marked with the trade-mark "Neutrodyne," etc.

The Freed-Eisemann Radio Corporation also became a stockholder in the Independent Radio Manufacturers, Inc., paying for its stock a certain sum in a certain manner. Certain conditions were attached to the holding of this stock, relating to assessments, which need not be mentioned here. The Independent Radio Manufacturers, Inc., agreed to defend the Freed-Eisemann Radio Corporation against suits for infringements and defray the entire cost of such suits, with the right to prosecute such suits in the name of the Freed-Eisemann Radio Corporation, but with the right to all recoveries by way of profits and damages. The sublicense agreement could be canceled for the failure of the sublicensee to carry out the terms thereof as to payment of royalties, etc., and for failure to pay assessments on the stock or annual dues, etc.

No attempt has here been made to quote accurately the agreements, as both the agreement between Hazeltine and the Independent Radio Manufacturers, Inc., and between the Independent Radio Manufacturers, Inc., and the Freed-Eisemann Radio Corporation, are set out as exhibits, attached to and made a part of the bill of complaint. On August 28, 1923, Hazeltine by agreement sold, assigned, transferred, and set over all his rights to the Hazeltine Research Corporation, the other plaintiff in the first group.

I fail to see how this second group of plaintiffs, consisting of corporations each having their own independent contract, have any legal or equitable interest which can be affected by the determination here between the two parties to this sublicense agreement, the plaintiff Independent Radio Manufacturers, Inc., and the Freed-Eisemann Radio Corporation, that are the sole parties to the written agreement which is the basis of this suit. The former is charged with the duty of instituting and defending all suits in connection with this plan of granting sublicenses outlined in the agreement between Hazeltine and the said Independent Radio Manufacturers, Inc. The mere fact that they are stockholders of the Independent Radio Manufacturers, Inc., does not make them proper, necessary, or indispensable parties. The corporate entity exists apart from its stockholders.

Nor do I find that any one of this second group of plaintiffs can lose or gain in any equitable or legal sense by a decree in favor of or against the first group of plaintiffs. In fact, the Hazeltine Research Corporation may be a proper, but is not in my opinion an indispensable, party plaintiff, nor can I see how, in the absence of allegations that the corporation Independent Radio Manufacturers, Inc., has duly refused to institute a suit against the defendant, that the second group of plaintiffs would have any interest in and to a suit against the defendant.

It must be remembered that it was distinctly agreed between the parties to this particular form of sublicense agreement that the sole right to initiate and prosecute suits in regard to infringements and trade-marks belonged to the plaintiff Independent Radio Manufacturers, Inc., which was compelled to bear the entire expense and had the sole right to all recovery by way of profits or damage. While not exactly so, nevertheless by fair inference all suits in connection with the performance of this agreement, so far as all the other sublicensees are concerned, was made a part of the agreed duty of this plaintiff. All of the relief asked for here can be duly considered and decided between the parties to this contract, without affecting any legal or equitable right of other stockholders or sublicensees of the said plaintiff.

Counsel for defendant urges this cannot be so, for the reason that the plan presented, by a careful reading of the entire bill of complaint, is that a sort of association or partnership exists for the carrying on of a single business, and that the trade-marks must relate to such single business, and that all the plaintiffs are joint adventurers or partners, and are therefore indispensable parties plaintiff. Bearing in mind that no place in this opinion does the court attempt to pass upon and decide any question which should be decided on the trial, and is only assuming the appearance of fact solely for the purpose of deciding this motion, I am unable to agree with this contention, for the reason that it seems to me that what is apparently intended by the agreements of plaintiffs (first group) with defendant is the right to practice an invention and to use a trade-mark or license in connection with such

practice in a business to be carried on by the defendant of its own.

Whether or not plaintiff is right or wrong in its allegations is not now before the court, but for the purpose of this motion this question of an association or partnership in a single business adventure, financed by and belonging to all of the sublicensees, and in which each is jointly interested, does not appear on the pleadings. If this is so, then it is the duty of this court to strike out all parties that are not indispensable, where allowing them to remain will oust the court of jurisdiction. Sioux City R. Y. Co. v. Trust Co., 82 F. 124, 27 C. C. A. 73.

Such a motion has been made and is now pending. From a careful reading of all the cases cited in the able briefs submitted by both parties, I feel satisfied that this court has power to grant such a motion, whenever it becomes apparent that the parties sought to be stricken out are not indispensable. Accordingly I will grant the motion to strike out the so-called second group of plaintiffs, and will deny the motion to dismiss for lack of jurisdiction on the ground of lack of diversity of citizenship, and order that the trial proceed.

This decision is without prejudice, of course, to a renewal of the motion at the close of the case, nor does it in any way indicate any finding of fact. The same are simply assumed for the purposes of this motion.